SHINOLA CO. v. THE HOUSE OF KRIEG et al.

(Supreme Court, Special Term, Monroe County. January 8, 1912.)

CONSPIRACY (§ 8*)—COMBINATION IN RESTRAINT OF TRADE—BOYCOTTING.

Complainant manufactured blacking and shoe-polishing outfits sold through jobbers and by salesmen direct to retailers, whose orders were sent to the local jobbers, who billed the goods to the customer and guaranteed the account, complainant charging a lower price to the jobber than to the retailer. Certain jobbers, members of a leather and shoe finders' association, took exceptions to a 5 per cent. discount allowance made by complainant to retailers from the list price on gross sales, and demanded an extra discount of 1 per cent. for cash. This being declined, letters were written to other jobbers both within and without the association objecting to complainant's method of doing business and to the rate of discount allowed the jobbers for the purpose of bringing pressure on complainant to grant the jobbers more favorable terms for marketing complainant's goods. *Held*, that the immediate object of the defendants and the effect of their campaign being not to fix the price at which the goods must be sold to the ultimate consumer, and no boycott being threatened against the sale of the goods in the open market, defendants' acts were not illegal as an unlawful conspiracy to injure plaintiff's business, and to restrain trade and commerce.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 7–11; Dec. Dig. § 8.*]

Suit by the Shinola Company against The House of Krieg and others. On plaintiff's motion for an injunction restraining defendants, as jobbers of shoe findings, from circulating letters among the trade derogatory to plaintiff's manner of doing business with other jobbers. Motion denied.

J. M. E. O'Grady, for plaintiff.
Booth & Ellis, for defendants The House of Krieg, Carl H. Krieg, and Bassett.

SUTHERLAND, J. The defendants belong to an association of jobbers called "National Leather and Shoe Finders' Association," which has a membership of about 200 throughout the United States, with headquarters at St. Louis; the defendant Knapp being the secretary of said association. The plaintiff is a manufacturer of black-

ing and shoe-polishing outfits, doing a very large business with the jobbing trade, including the members of said association. The defendant Bassett is the secretary and treasurer of The House of Krieg, a jobbing house located in New York City, of which the defendant Carl H. Krieg is the president. The plaintiff markets a large portion of its goods through jobbers, but maintains a force of salesmen who solicit orders from the retail trade; and, where orders are taken in the vicinity of the jobbing houses with which plaintiff is doing business, they are turned over to the jobbers, who bill the goods to the customer and guarantee the account. The plaintiff, in turn, charges the jobber a lower price than the retailer pays the jobber; the difference, less his expenses, constituting the jobber's profit.

Early in 1911 the defendant Bassett requested the plaintiff to allow his house an extra discount of one per cent. for cash, which was not then allowed other jobbers. This request was refused. Later Bassett took exceptions to an allowance by plaintiff of 5 per cent. discount to the retailer from the list price on sales in gross lots made by plaintiff's agents in New York City, which diminished by so much the profits of the jobber, and communicated with other jobbers there on the subject, and the 5 per cent., discount was withdrawn by plaintiff in that territory for a time, but was later restored. The subject of the discount allowed by the plaintiff to the retail trade, and the entire matter of terms granted to the jobber, was taken up by Bassett with the defendant Knapp as secretary of the National Leather and Shoe Finders' Association, and Knapp wrote the plaintiff, urging a change of rate to be allowed the members of the association. The matter was finally taken up by the executive committee of the association. August 19, 1911, the plaintiff addressed a communication to the defendant Knapp, stating that the plaintiff desired to have copies thereof sent to all members of said association, and in the letter sarcastic reference was made to Bassett, although he was not mentioned by name, and the subject in controversy was discussed in great detail from plaintiff's standpoint. October 6th a general letter was sent to the members of the association by the defendant Knapp, in which it is urged that all jobbers decline to accept orders in the future containing a provision for a 5 per cent. discount to the retailers, on the ground that it did not leave sufficient profit to the jobber to pay him for the handling of the goods; the letter stating that such was the finding of the executive committee. October 14th a letter was sent out to the members of the association by the defendant Bassett, going over the whole matter and urging the members to decline to deal with the plaintiff on the 5 per cent. basis. The result of the agitation has been that numerous jobbers, who were former customers, have refused to accept orders on those terms, and the plaintiff alleges that great damage has resulted to its business.

The claim is made by the plaintiff that the purpose and acts of defendants constitute an unlawful conspiracy to injure the business of the plaintiff and to injure and restrain trade and commerce. In the motion papers, the motives of the defendants, especially Bassett, are charged to be malicious. Malice is denied in the answering affidavits,

in which defendants allege that they are only endeavoring to obtain a fair rate of profit for handling the plaintiff's goods.

After reading the affidavits and letters pro and con, I fail to see any ground for an injunction. The direct and immediate object of defendants is not to fix the price at which the plaintiff's products must be sold to the ultimate consumer. If such were the object, it possibly would bring the effort within the condemnation of the Supreme Court of the United States, as expressed in the recent case entitled "Dr. Miles Med. Co. v. John D. Park & Sons Co.," 220 U. S. 373, 31 Sup. Ct. 376, 55 L. Ed. 502, and within the class of concerted acts condemned by our state statutes and judicial decisions. People v. Sheldon, 139 N. Y. 251, 34 N. E. 785, 23 L. R. A. 221, 36 Am. St. Rep. 690; Cummings v. Union Blue Stone, 164 N. Y. 401, 58 N. E. 525, 52 L. R. A. 262, 79 Am. St. Rep. 655. In that connection, it should be remembered that there is here no combination of manufacturers controlling the output of shoe blacking, and no combination of jobbers controlling the only means of marketing the product of any single manufacturer. The primary object sought by the defendants is a more liberal rate of profit to jobbers for handling the sales and guaranteeing the payment of the bills, and the means utilized are the circulation of written arguments as to the demerits of the present rate. The 5 per cent. discount allowed to retailers (which lessens by so much the amount to be retained by the jobber) happens to be the specific thing criticised by defendants; but, after all, their grievance, real or fancied, is the smallness of the jobber's profit. A result equally satisfactory to the jobbers, no doubt, could be attained by retaining the 5 per cent. discount to retailers, and lowering the price at which the goods are charged to the jobber. The thing the jobbers are after is more pay for their part in marketing plaintiff's goods. The court certainly will not attempt to decide whether the present rate is fair to the jobber, or otherwise. We can only determine whether the means employed by the defendants to accomplish their purpose are unlawful.

In the letters that are complained of, there is no false statement as to the facts in the case. There is no fraud attempted, and no endeavor to abrogate existing contracts. There is no penalty threatened against any jobber who fails to yield to the arguments offered by the defendants Bassett and Knapp; nor disciplinary measures on the part of the association or coercive tactics of any sort have been suggested to compel any jobber to do otherwise than follow his own judgment as to future dealings with the plaintiff, and the plaintiff is not prevented from dealing directly with the retailer if it desires to dispense with the jobber as an intermediary. No boycott is threatened against the sale of plaintiff's commodities in the open market. So that it is difficult to see how either the acts or the purposes of the defendants can be condemned as unlawful.

True it is that the success of the effort of the defendant may have the effect to increase the cost to the ultimate consumer. The plaintiff is not likely to sacrifice its own profits if the demands can be met at the expense of the purchasing public. But the same result is likely to follow an increase of wages brought about by the united action of

laborers. That does not make a labor strike for higher wages illegal. The labor strike, if successful, increases the cost of production. The success of defendants' efforts will increase the cost of marketing the goods. In either event the price which the individual consumer must pay is apt to be enhanced. But the raising of the price to the consumer is not the primary object of either. That primary object being lawful in itself is not rendered illegal by the resulting increase of price to the consuming public.

If the organized acts and purposes which were declared to be lawful in National Protective Association v. Cumming, 170 N. Y. 315, 63 N. E. 369, 58 L. R. A. 135, 88 Am. St. Rep. 648, be compared with the efforts and purposes sought to be enjoined in this action, it will be seen that the defendants are by a wide margin within their strict legal rights. It is admitted that the defendant Bassett has gone outside the ranks of his own association and endeavored to persuade other jobbers, not members, to take the same position with reference to the present rates for selling plaintiff's goods. "They have the right to go farther and to solicit and persuade others who do not belong to their organization and are employed for no fixed period, to quit work also, unless the common employer of all assents to lawful conditions, designed to improve their material welfare." This statement, taken from the dissenting opinion of Judge Vann in National Protective Association v. Cumming, supra, is well recognized as the law applicable to workingmen's organizations, if the effort to persuade others to quit be peaceable and free from intimidation. Sinsheimer v. United Garment Workers, 77 Hun, 215, 28 N. Y. Supp. 321; Mills v. U. S. P. Co., 99 App. Div. 605, 91 N. Y. Supp. 185; Butterick Pub. Co. v. Typo. Union, No. 6, 50 Misc. Rep. 1, 100 N. Y. Supp. 292. Is a jobber then to be denied a right which is freely accorded to an artisan? Not if the law of the land is to be justly administered and made applicable to all, without distinction as to vocation or business pursuits.

Accordingly, the motion for an injunction pendente lite is denied, with $10 costs.