## PEOPLE v. SUFFOLK CONTRACTING CO. et al.

(Supreme Court, Appellate Division, Second Department.  February 11, 1916.)

1. CONSPIRACY ⬳23—WHAT CONSTITUTES.

The gravamen of the offense of conspiracy is the combination; the offense being complete upon proof of the unlawful agreement and an overt act, done to effect its object, by one or more of the parties to the agreement.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 30–39; Dec. Dig. ⬳23.

For other definitions, see Words and Phrases, First and Second Series, Conspiracy.]

2. CONSPIRACY ⬳47—CIRCUMSTANTIAL EVIDENCE.

In a prosecution for conspiracy, the unlawful agreement and necessary criminal intent may be proved by circumstantial evidence, disclosing a common design on the part of the persons charged to act together for the accomplishment of the unlawful purpose.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 105–107; Dec. Dig. ⬳47.]

3. CONSPIRACY ⬳47—CIRCUMSTANTIAL EVIDENCE—SUFFICIENCY.

In a prosecution for conspiracy against a contracting company, a state engineer, and others, charged with conspiring to defraud the state in the construction of a road, circumstantial evidence held insufficient to support a conviction under the rule that, to support a conviction, such evidence must establish guilt as naturally flowing from the facts proved and consistent with them; such facts excluding to a moral certainty every hypothesis but that of guilt.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 105–107; Dec. Dig. ⬳47.]

Appeal from Trial Term, Suffolk County.

The Suffolk Contracting Company and others were convicted of conspiracy, and they appeal.  Reversed.

Argued before JENKS, P. J., and CARR, STAPLETON, MILLS, and RICH, JJ.

Willard N. Baylis, of New York City (Harry H. Reeve, of Greenport, on the brief), for appellants Suffolk Contracting Co. and others.

William J. Lewis, of Brooklyn (Daniel McNamara, Jr., of Brooklyn, on the brief), for appellant Kinney.

Rowland Miles, of Northport, for appellant Robartes.

Ralph C. Greene, Dist. Atty., of New York City (Peter P. Smith, of Brooklyn, and Le Roy M. Young, of Babylon, on the brief), for the People.

PER CURIAM.  The defendants were indicted for and convicted of the crime of conspiracy.  The definition of the statute alleged to have been violated is:

"If two or more persons conspire: * * * To cheat and defraud another out of property, by any means which are in themselves criminal, or which, if executed, would amount to a cheat, or to obtain money or any other property by false pretenses, * * * each of them is guilty of a misdemeanor." Section 380, subd. 4, of the Penal Law (Consol. Laws, c. 40).

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

It was alleged that the design was to cheat the state. The means by which that design was to be accomplished were that a corporate construction contractor, which had a contract for road building, was to omit a substantial amount of required gravel, state officers were to accept the work as a complete performance, and the contractor was to collect the full contract price. Of course, if an agreement was made to accomplish that design by those means, it was a plain violation of law.

[1] The gravamen of the offense is the combination. The offense is complete upon proof of the unlawful agreement, and of an overt act, done to effect the object thereof, by one or more of the parties to the agreement. People v. Sheldon, 139 N. Y. 251, 264, 34 N. E. 785, 23 L. R. A. 221, 36 Am. St. Rep. 690; People v. Flack, 125 N. Y. 324, 332, 26 N. E. 267, 11 L. R. A. 807; sections 580 and 583, Penal Law. It may be admitted at this point that, if a corrupt agreement was proved, there was ample proof of acts done to effect its object by persons charged as participants, and that some of those acts were alleged in the indictment.

[2, 3] There was no direct evidence of a corrupt agreement between any of the defendants. Such evidence is seldom available without the aid of a confession or an informer. The unlawful agreement and the necessary criminal intent may be proved by circumstantial evidence. These essentials of the crime may be established, the court say in People v. Flack ut supra, "by inference, as a deduction from conduct which discloses a common design on the part of persons charged to act together for the accomplishment of the unlawful purpose." When the quality which makes this evidence probative inheres in it, it is quite as satisfactory and conclusive as direct proof. In People v. Bennett, 49 N. Y. 137, 144, the Court of Appeals say:

"In determining a question of fact from circumstantial evidence, there are two general rules to be observed: (1) The hypothesis of delinquency or guilt should flow naturally from the facts proved, and be consistent with them all. (2) The evidence must be such as to exclude, to a moral certainty, every hypothesis but that of his guilt of the offense imputed to him; or, in other words, the facts proved must all be consistent with and point to his guilt not only, but they must be inconsistent with his innocence."

And again (page 148):

"Motive is an inducement, or that which leads or tempts the mind to indulge the criminal act. It is resorted to as a means of arriving at an ultimate fact, not for the purpose of explaining the reason of a criminal act which has been clearly proved, but from the important aid it may render in completing the proof of the commission of the act when it might otherwise remain in doubt. With motives, in any speculative sense, neither the law nor the tribunal which administers it has any concern. Bur. on Circ. Evi. 296. It is in cases of proof by circumstantial evidence that the motive often becomes not only material, but controlling, and in such cases the facts from which it may be inferred must be proved. It cannot be imagined any more than any other circumstance in the case."

In People v. Razezicz, 206 N. Y. 249, 273, 99 N. E. 557, 565, the court say:

"In a criminal case circumstantial evidence to justify the inference of guilt must exclude to a moral certainty every other reasonable hypothesis. Cir-

cumstantial evidence in a criminal case is of no value if the circumstances are consistent with either the hypothesis of innocence, or the hypothesis of guilt; nor is it enough that the hypothesis of guilt will account for all the facts proven. Much less does it afford a just ground for conviction that, unless a verdict of guilty is returned, the evidence in the case will leave the crime shrouded in mystery."

Again (206 N. Y. 272, 99 N. E. 565):

"Circumstantial evidence, as has been frequently remarked, is unsatisfactory, inconclusive, and dangerous, or satisfactory, conclusive, and safe, according as it points to a certain result and is not inconsistent with any other result or conclusion."

In People v. Fitzgerald, 156 N. Y. 253, 258, 50 N. E. 846, 847, the court say:

"In attempting to prove a fact by circumstantial evidence there are certain rules to be observed that reason and experience have found essential to the discovery of truth and the protection of innocence. The circumstances themselves must be established by direct proof and not left to rest upon inferences. The inference which is to be based upon the facts and circumstances so proved must be a clear and strong logical inference, an open and visible connection between the facts found and the proposition to be proved."

We are not concerned with facts which may show one or more of the defendants to be guilty of independent crimes, unless those facts tend to connect them with the commission of the crime charged in the indictment. The crucial question is: Is there sufficient evidence to prove a conspiracy between any two or more of the defendants? If this question is answered in the negative, the conviction falls.

The defendants convicted are the contractor, Suffolk Contracting Company, a corporation; Lynch, its president; Huber, an engineer in charge of the work for the contractor and a stockholder in it; Scanlon, a foreman; Kinney, who supervised in the latter stage of construction a small section of the work for the contractor, in which he was a stockholder; Robartes, an engineer in the employ of the state, who was immediately assigned to the work and was charged with the duty of actual supervision; Stewart, a state engineer, in charge of one of the six divisions into which the state is divided. See sections 16 and 17 of the Highway Law (chapter 30, Laws of 1909, constituting chapter 25 of the Consolidated Laws). Among Stewart's duties, prescribed by statute, are:

"He shall: * * * (3) Examine and inspect, *or cause to be examined and inspected*, the work performed on any highways, and report to the commission as to whether the work has been done in accordance with the plans and specifications and contracts made therefor. (4) Approve and certify to the monthly estimates or allowances for work being performed under any contract let for the construction, improvement or maintenance of state and county highways. (5) Inspect, *or cause to be inspected*, all state and county highways, and report from time to time in respect thereto, when required by the commission. (6) Consult with district, county and town superintendents and other highway officers in respect to the proper methods of constructing, improving and maintaining highways and bridges." (Italics ours.)

It will be perceived that he may perform some of those duties himself, or cause them to be performed by others. There was no evidence that either Stewart or Robartes had any pecuniary or other mo-

tive to be faithless to their duties. There was no proof of any general or special connection between either of them and the corporate defendant or its representatives. The deficiency in the supply and use of the material required by the contract specifications, while very substantial, was not so flagrant as to be manifest by bare inspection. The people's expert witnesses, who made examination after completion for the purpose of testifying, were required to make borings at given points along the line of construction to give evidence of departure from the specifications. The county superintendent and the supervisor of the town in which the road was situated officially certified, as required by law, that they examined the road and found its condition satisfactory.

Stewart's office was in White Plains, Westchester county, miles distant from the work. He certified to work done and materials furnished after Robartes had certified the same result to him. He was seldom at the place of the work. In the nature of things he could do little more than rely on the reports of Robartes, who was assigned to the work of actual supervision. It was the duty of Robartes to be on the work and to be competent and reasonably careful. He could have, by competent vigilance, detected the deficiency. He signed certificates of performance. There was some evidence that in a few instances Robartes had knowledge of a concrete departure from the specifications. Throughout the record we do not find on the part of Robartes, aside from the acts and omissions recited, any word or act indicative of concert or agreement between him and the other defendants. The evidence against Robartes may establish neglect of duty, inefficiency, or indifference; it may arouse curiosity and invoke suspicion; but there is no proof of one fact or series of facts that points with moral certainty to the participation of either Stewart or Robartes in a conspiracy.

Lynch was president of the corporate defendant. He signed the contract and the certificates of performance. He had in the payments the pecuniary interest of a stockholder. He was unskillful and inexperienced as a road builder. He was at the place of the work occasionally, but had nothing to do with the construction. He chiefly occupied himself with the money matters of the corporation. He purchased materials. There was no proof that he purchased substantially less than was required, or that he had actual knowledge of a deficiency in the material used, or of any defect in construction.

Kinney is an engineer, and is familiar with highway construction. He was a stockholder in the defendant corporation. On behalf of the corporate defendant he supervised the construction of a small section of the road at the last part of construction. Most of the work had been done when he came to supervise. When employing Perry, a laborer, who was a witness, he told him to obey McVey. McVey put the laborer to work. Perry saw dirt put on the road. He put some on. He got it from the side of the road. McVey told him to put it on. Dirt should not have been used in the construction. A witness, Norton, had a conversation with Kinney. He said to Kinney: "I think you are in a hurry to get through. It is getting cold weather."

Kinney replied that he was; that he hoped they would finish by fall. He added that "there wasn't much in building state roads just now; he would have to give up from headquarters down to the supervisor to get a job." This is the evidence which it is asserted involves him.

Huber was the engineer of the defendant corporation, in which he was a director and stockholder. He was experienced. He was familiar with the contract and its specifications. Most of the work was done under his supervision. He was on the work every day. When spoken to by one Beck concerning the construction, he said he did not care how long the road would last, so long as he got out of town. He had actual knowledge of some substantial departures from the specifications.

Scanlon was a foreman, employed by the corporate defendant. He was in charge of the laborers and teams. He had no interest in the earnings of the corporate defendant. He had some experience as a foreman. The evidence claimed to involve him is: ' Bianco testified that there was a block in the center of the road to indicate the height of the stone. Scanlon took the block away, and the inspector said, when told of it, that he would quit the job. The block was replaced. Just around the block the stone was made level with it, but not in some other place. There were places on the road where there were not more than three inches of gravel. Walker testified that Robartes put two stumps in the road, but when his back was turned Scanlon pulled them out quickly and put tar on. Beck testified that sand was shoveled on the road in some places. The sand was taken from alongside the road. This sand should not have been used. Scanlon was present when this work was done. Scanlon did not do it himself; he had the men do it. Brockman testified that, after some of the larger stones had been put on the road, Scanlon put a little dirt over them, taking it from the side of the road, and rolled them down. McMullen testified that Scanlon was most of the time in charge of the gang that put sand and loam over the first and second coats.

Huber doubtless was actively engaged in defrauding the state and he had an interest in so doing; but we think that the evidence does not prove beyond a reasonable doubt that that which the other defendants did or omitted to do was the result of a conspiracy to accomplish that purpose. There is no evidence that Stewart, Robartes, or Scanlon had any motive to commit the crime charged. Lynch and Kinney had a motive, but the acts and omissions of these five are at least as consistent with innocence as with guilt of conspiracy.

The evidence, therefore, in a case in which it is sought to establish guilt of crime wholly by circumstantial evidence, is insufficient, and the judgment should be reversed, and a new trial ordered.