THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* HANS MULLER and VINCENT TEOFILO, Respondents.

Submitted April 25, 1941; decided July 29, 1941.

*William O'Dwyer, District Attorney (J. Vincent Keogh* and *Henry J. Walsh* of counsel), for appellant. The facts

as stipulated justified the respondents' conviction. (*People v. Bellows*, 281 N. Y. 67.) The complainant was not a party to a labor dispute. (*Canepa v. "John Doe,"* 277 N. Y. 52; *American Gas Stations, Inc.,* v. *"John Doe,"* 250 App. Div. 227; *Silverglate* v. *Kirkman*, 171 Misc. Rep. 1051; *Scharf* v. *"John Doe,"* 247 App. Div. 882; *Weil & Co.* v. *"John Doe,"* 168 Misc. Rep. 211.)

*Louis Waldman, Solomon Jacobson* and *Samuel Duker* for respondents. The judgment should be affirmed because the peaceful and orderly picketing was against a company with which the union had a *bona fide* labor dispute. (*National Protective Assn.* v. *Cumming*, 170 N. Y. 315; *Exchange Bakery & Restaurant, Inc.,* v. *Rifkin*, 245 N. Y. 260; *Nann* v. *Raimist*, 255 N. Y. 307; *J. H. & S. Theaters* v. *Fay*, 260 N. Y. 315; *Sherman* v. *Abeles*, 265 N. Y. 383; *Goldfinger* v. *Feintuch*, 276 N. Y. 281; *Santise* v. *Martins, Inc.,* 258 App. Div. 663.) The defendants were not guilty of disorderly conduct under subdivision 2 of section 722 of the Penal Law because the peaceful and orderly picketing negatived any intention to provoke a breach of the peace, or any tendency to occasion a breach of the peace. (*People ex rel. Clark* v. *Keeper*, 176 N. Y. 465; *People* v. *Phillips*, 245 N. Y. 401; *People* v. *Monnier*, 280 N. Y. 77; *People* v. *Nixon*, 248 N. Y. 182; *People* v. *Perry*, 265 N. Y. 362; *People* v. *McCauliff*, 267 N. Y. 581; *Senn* v. *Tile Layers' Protective Union*, 301 U. S. 468; *Stillwell Theatre, Inc.,* v. *Kaplan*, 259 N. Y. 405.)

LEHMAN, Ch. J. The defendants have been convicted upon a charge of " Disorderly conduct tending to a breach of the peace, in violation of section 722, subdivision 2, of the Penal Law." Some testimony was taken at the hearing of the charge, but by stipulation all the testimony was expunged from the record and the parties stipulated the facts pertaining to the complaint which were to be taken " in lieu of the sworn testimony." We quote the facts as stipulated in full:

" 1. The complainant, Ben Berkowitz, is the owner of a retail haberdashery store at 1587 Pitkin Avenue, Brooklyn, County of Kings;

" 2. That on or about November 26th, 1935, the complainant and the National Wiring & Protective Co. Inc. entered into written agreements which are here offered in evidence at Exhibits 1 and 2;

" 3. The National Wiring & Protective Co. Inc. have made agreements with other subscribers similar to the one represented by Exhibits 1 and 2;

" 4. That on or about January 3, 1940, the defendant Andrew Fosgreen came to the store of the complainant and had a conversation with the complainant, in the course of which he told him that the union and the employees were on strike against the National Wiring & Protective Co. Inc., and that they would put out pickets in front of his store, and that the maintenance of the burglar alarm system was unfair to Local No. 3 unless the complainant obtains union service on that system;

" 5. That two days later, on January 5, 1940, the defendants Hans Muller and Vincent Teofilo appeared in front of the complainant's premises, each bearing a sign attached to his person, reading substantially as follows: ' Maintenance of Burglar Alarm in this store unfair to Local No. 3, International Brotherhood of Electrical Workers Union, A. F. of L.; '

" 6. That the defendants Hans Muller and Vincent Teofilo picketed in an orderly and peaceful way;

" 7. That all three defendants are members of the International Brotherhood of Electrical Workers Union, and are on strike;

" 8. That there is a labor dispute over wages and hours between the International Brotherhood of Electrical Workers Union, Local No. 3, the employees, and the National Wiring & Protective Co. Inc.;

" 9. That no labor was performed on the burglar alarm system installed at the complainant's premises since January 1, 1940."

The stipulated facts thus establish beyond dispute that the defendants are members of a labor union engaged in a labor dispute with the National Wiring and Protective Co., Inc., over wages and hours of its employees. The National Wiring and Protective Co., Inc., has installed in the complainant's place of business an electric burglar alarm apparatus and has agreed to maintain the apparatus in serviceable condition, and the union has demanded that the complainant obtain union service on that system. The defendants have picketed in an orderly and peaceful way. Their conduct has not been disorderly in any way and has not tended towards a breach of the peace, unless peaceful picketing with a sign calculated to inform the public that the burglary alarm system installed in the complainant's store is not being maintained by the union of which the defendants are members is unlawful, and without more constitutes disorderly conduct.

The picketing is for the purpose of promoting the lawful interests of a labor union in a labor dispute. (*Goldfinger* v. *Feintuch*, 276 N. Y. 281.) There is here a " labor dispute " as that term is defined in section 876-a of the Civil Practice Act even under the restrictive interpretation of the scope of the statute by this court in *Opera on Tour, Inc.*, v. *Weber* (285 N. Y. 348). Even were that not true, however, peaceful picketing by the members of a union in front of a business served by the union is the exercise of a right of free speech guaranteed by the Constitution of the United States as construed by the Supreme Court of the United States. (*American Federation of Labor* v. *Swing*, 312 U. S. 321, decided February 10, 1941; *Bakery & Pastry Drivers & Helpers Local No. 802* v. *Wohl*, 313 U. S. 548.) Construction of the Federal Constitution by the Supreme Court of the United States is binding on all State courts.

The order should be affirmed.

Finch, J. (dissenting). May a storekeeper suffer damages through loss of business and be annoyed, disturbed, interfered with and offended by having his store picketed because there is used therein an electrical burglar alarm installed four years before with an incidental agreement by the supplier to keep the machine in order?

Defendants were convicted of having violated the Penal Law (§ 722), defining disorderly conduct, in that they picketed the retail haberdashery store of complainant in such a manner as might occasion a breach of the peace. The complainant was a consumer who, four years before the acts of picketing herein complained of, had contracted with the National Wiring and Protective Company, Inc. (hereinafter called National) for the installation of a burglar alarm apparatus for the store premises together with an incidental agreement whereby the storekeeper paid a monthly charge of $7.50 for the use of the apparatus and to keep the same in serviceable condition. The storekeeper on his part agreed not to repair, or to permit any other person to tamper with, or repair this apparatus. This contract for the acquisition of the burglar alarm was deemed renewed from year to year unless notice was given otherwise, was in effect at the time of the picketing and was silent as to whether union or non-union help was to service the alarm. At the time of the picketing in question, this contract was binding on both parties and was not up for renewal.

On January 3, 1941, the owner of the store was notified that the employees of National were on strike and that, unless the services of the members of the International Brotherhood of Electrical Workers (hereinafter called the union) were engaged to service this burglar alarm apparatus, the store would be picketed. The haberdashery store was not in the same trade or occupation as National, no members of the union were employed by the complainant, and there were no labor disputes between complainant and any of his own employees. Complainant, therefore, was not a party to the labor dispute and did not sell in his store, for profit

or otherwise, any of the articles manufactured by National. The only relationship between complainant and National was through the acquisition by the storekeeper of the burglar alarm apparatus with the incidental right to have it kept in serviceable condition through the payment of a small monthly charge. Also no repair work to the burglar alarm apparatus was being done at the time of the picketing, nor has been done since the inception of the strike. Nevertheless, the two defendants, as pickets, appeared in front of the store each bearing a sign reading " Maintenance of Burglar Alarm in this store unfair to Local No. 3, International Brotherhood of Electrical Workers Union, A. F. of L."

The business of National is to market burglar alarms by means of installing the apparatus with an incidental service agreement to keep the same in working order. Once the apparatus is installed, it is in continuous use on the premises, and no right of resale exists in the owner of the premises. Thus in the case at bar the storekeeper was the ultimate consumer of this property. (Cf. *People* v. *Bellows*, 281 N. Y. 67; *Canepa* v. *"John Doe,"* 277 N. Y. 52.)

We are thus brought to a consideration of the fundamental question involved, namely, whether picketing of a storekeeper, who has acquired and is now using as an ultimate consumer a burglar alarm apparatus, is lawful. May this complainant be coerced into taking sides in a labor dispute in another industry to which he was not a party, in which he has no interest, and where no legitimate action of his could dispose of the controversy? If the complainant had submitted to the coercion of the union and its members by allowing them to service the burglar alarm system, he would have subjected himself to liability for damages for breach of contract. On the other hand, if he refused, his business and trade would suffer serious jeopardy by the continued picketing of his premises. Looking at the matter realistically, the parading of pickets in front of a retail store, even though the conduct of the picket is peaceful and orderly, seriously interferes with the business of the store. There are many persons among the population who,

because of personal convictions, will not cross a picket line, besides many timid persons who fear bodily harm or other retaliation, and hence choose another store.

Under the well-established policy of this State, embodied in the Constitution, statutes, and judicial decisions, the right of working men to organize to better their conditions has long been recognized. Strikes, picketing, and the right to bargain collectively through representation of their own choosing are rights which have been guaranteed by both the New York State Labor Relations Act (Labor Law [Cons. Laws, ch. 31], art. 20) and the Constitution recently adopted for New York State (Art. 1, § 17). However, such methods must be to further lawful labor objectives by lawful means. There is no denial of the right of working men to join an existing union or to form new unions to induce an employer to employ union labor or to improve conditions of employment. But the use of these weapons must not be abused. Picketing must not exceed peaceful persuasion, and where it cannot be disassociated from violence, its use will be prohibited. The means as well as the end must be lawful. (*Busch Jewelry Co.* v. *United Retail Employers' Union,* 281 N. Y. 150; *Milk Wagon Drivers Union* v. *Meadowmoor Dairies,* 312 U. S. 287.) How far may these weapons be used against third parties who are not parties to the original controversy? This question must be answered by reference to recent cases.

Originally the right to strike and the right to picket arose between the original parties to the labor contract. " Freedom of choice in the selection of representatives on each side of the dispute is the essential foundation of the statutory scheme [National Labor Relations Act]." (*Texas & N. O. R. R. Co.* v. *Brotherhood of Railway & Steamship Clerks,* 281 U. S. 548, 569.) The reasonable self-interest of labor then caused similar rights to arise between the union and establishments in the same industry where no grievance existed between employer and employee, giving the union the right to insist that even here the same terms and conditions of employment be maintained in order

that such employers and employees might not profit at the expense of those who maintained union standards. The decisions in the Court of Appeals have long recognized the common economic interest among workers to maintain union conditions not in some single factory, but generally throughout the industry, in order that those not keeping to the union standards might not profit at the expense of those who do. (*Mays Furs & Ready-to-Wear, Inc.*, v. *Bauer*, 278 N. Y. 331; *National Protective Assn.* v. *Cumming*, 170 N. Y. 315; *Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, 245 N. Y. 260.) The right to communicate the facts of such a labor dispute between a union and an employer in the same industry is protected by the United States Constitution. (*American Federation of Labor* v. *Swing*, 312 U. S. 321; *Bakery & Pastry Drivers & Helpers Local No. 802* v. *Wohl*, 313 U. S. 548.) So, too, union workers with proper regard for their self-interest, may refuse to work on non-union materials. (*Bossert* v. *Dhuy*, 221 N. Y. 342.)

A further step impelled by the reasonable self-interest of labor was taken when it was held that picketing of a retail establishment which resold for profit the product of a non-union manufacturer was justified. (*Goldfinger* v. *Feintuch*, 276 N. Y. 281.) Unless this union could follow this non-union product and seek to persuade customers not to purchase at the point of outlet, it would follow that any manufacturer or other non-union supplier might, through the establishment of his plant in an out-of-the-way place, make impractical the application of the right to picket. It is true that even in the event of the removal of the plant to an out-of-the-way place the picketing would tend to persuade other workers not to take the place of the strikers, but its further effect of inducing the consumer public not to buy would thereby be thwarted completely unless the right existed to follow the product into the hands of those who profited through the non-union standards which might be reflected in the price of the product. Unless, therefore, the union could follow the non-union product into the hands of those

engaged in the business of reselling for profit, we would have continuously present as great a factor to permit employers and employees to profit from not maintaining union standards as we had when economic organization was based on the operations of a single shop and the right was not recognized to have union conditions prevail generally. Because of the damage to the laborer which may be caused by the retailer who sells non-union goods for profit, the union has the right to picket such retailer. (*Goldfinger* v. *Feintuch, supra.* See, also, *People* v. *Bergstein*, 286 N. Y. 613, decided herewith.)

In the case at bar, we are dealing not with a retailer but with an ultimate consumer. Here, since the acquisition has been completed for over four years and there exists only an incidental agreement for renewal which is not subject to renewal at this time, picketing would have no legitimate reason for existence except as a form of punishment. No room exists for an act of persuasion as in the case of the retail seller for profit.

The picketing of this ultimate consumer, who is not engaged in the industry in which the labor dispute has arisen, provides a true secondary boycott which has always been held an unlawful labor objective and which this court has recently condemned. In *People* v. *Bellows* (281 N. Y. 67, 77) this court said:" In this particular we differ with the Special Sessions and hold that such picketing, which has been declared unlawful by this court, does constitute disorderly conduct   *   *   *."

Likewise, in a recent case, where the plaintiff had purchased a sign which had been erected in front of his place of business by labor affiliated with the union which was a rival of the defendant union, and the defendants caused the place of business of plaintiff to be picketed, and as a result plaintiff suffered loss of business and would suffer irreparable damage and injury: " The complaint sufficiently alleges that the picketing by the defendants is part of a true secondary boycott and an unlawful interference with the business of the plaintiff." (*Canepa* v. " *John Doe*," 277 N. Y. 52, 54.)

It is urged that, since the picketing of the complainant's store was peaceful and orderly it does not amount to disorderly conduct. The magistrate, however, has found that the parading of pickets in front of this store interferes with the business of the store, causes many persons to refrain from entering the store for fear of bodily harm or other retaliation, and threatens to cause a breach of the peace. Where picketing is unlawful and threatens to cause a breach of the peace, we have only recently held that such acts amount to disorderly conduct within the meaning of section 722, subdivision 2, of the Penal Law which provides that any person who acts in such a manner as to annoy, disturb, interfere with, obstruct or be offensive to others, whereby a breach of the peace may be occasioned, shall be deemed to have committed the offense of disorderly conduct. (*People* v. *Bellows*, 281 N. Y. 67.)

It is further urged, however, that since the right of free speech is guaranteed by the Federal and State Constitutions, this conviction, if upheld, will lead to an unconstitutional interpretation of section 722, subdivision 2, of the Penal Law. Assuming that the right to picket is entitled to no less rights than we give to the right to free speech (Cf. *American Federation of Labor* v. *Swing, supra; Bakery & Pastry Drivers & Helpers Local No. 802* v. *Wohl, supra*), by the same token, an abuse of the right of free speech would likewise be an abuse of picketing. It has been repeatedly held that the constitutional rights of freedom of speech are not absolute and are subject to such reasonable regulations as are necessary to promote and preserve the public peace. (*Near* v. *Minnesota*, 283 U. S. 697; *Stromberg* v. *California*, 283 U. S. 359; *Whitney* v. *California*, 274 U. S. 357; *Patterson* v. *Colorado*, 205 U. S. 454.) " The power and the duty of the State to take adequate steps to preserve the peace and to protect the privacy, the lives, and the property of its residents cannot be doubted." (*Thornhill* v. *Alabama*, 310 U. S. 88, 105.)

Labor unions, when their actions are unlawful, are not free from the provisions of the Penal Law and where

picketing is used to further an unlawful labor objective, such as a combined effort of employees to coerce an employer to pay a stale or disputed claim, to extort money from the employer, to force the employer to commit a crime, to injure the employer solely because of malice or ill will, or to conspire in the face of an emergency or otherwise to coerce others to cease maintaining law and order or defense among those engaged in police duty or in the armed forces, it is subject to reasonable limitation by the courts and Legislature of the State. (*Opera on Tour, Inc.*, v. *Weber*, 285 N. Y. 348, 356.)

It follows that the order of the Appellate Part of the Court of Special Sessions should be reversed and the judgment of conviction affirmed.

LOUGHRAN, LEWIS and DESMOND, JJ., concur with LEHMAN, Ch. J.; FINCH, J., dissents in opinion in which RIPPEY and CONWAY, JJ., concur.

Order affirmed.