THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* STEPHEN REMSON, HUBERT SIMON, SANDRA GRUBIAK, THOMAS BERGEN and JOANN FIRNS, Defendants.

City Magistrate's Court of New York, Borough of Queens, July 27, 1946.

*Charles P. Sullivan, District Attorney (Albert E. Short of counsel), for plaintiff.*

*Louis Kantor* and *Mathew M. Levy* for defendants.

SOFFER, M. Defendants are charged with the offense of disorderly conduct in violation of subdivision 2 of section 722 of the Penal Law. The evidence and testimony having been stipulated, only questions of law remain.

On October 25, 1945, a strike was in progress against American Airlines, Inc., at the New York City Municipal Airport. The airport, owned by the city, is under the jurisdiction of the city's Department of Marine and Aviation. It is open and freely accessible to the public; no ticket or admission charge is required. Several hangar buildings are under lease to American Airlines for its private profit and gain.

The New York City police permitted six pickets in front of one of these hangars. This was some 450 feet distant from the nearest (94th Street) entrance to the airport grounds, according to the map in evidence. The police then established a " line " at the 94th Street entrance and forbade any more persons from passing that line into the airport for the purpose of picketing.

The defendants, having a legitimate interest in the strike, and intending to picket in order to disseminate information concerning the facts of the labor dispute, proceeded to enter the airport, passing the police-established " line " aforesaid.

There is no claim by the People that the attempted picketing by these defendants, or their associates who were already picketing, was accompanied by fraud, violence, threats or intimidation, expressed or implied, or that any false statements, oral or written, were made. Defendants' uncontradicted testimony is that they had no intent of provoking a breach of the peace.

The People contend that the airport was " private property ", that defendants had no right thereon except by permission, and that the permission to picket or remain on the grounds could be revoked at will.

We do not find it necessary to pass on any of these contentions. Assuming, without deciding, that they are valid, there is no evidence indicating that permission to enter was ever denied to these defendants by the city Department of Marine and Aviation which, it is conceded, had jurisdiction over the airport. The New York City police presumed to deny permission; but there is nothing to indicate that the police had jurisdiction or power to prescribe admission rules on behalf of the Department of Marine and Aviation.

The People submit that section 435 of the City Charter vests the Police Department with the duty to enforce and prevent violation of all laws and ordinances; but the court is aware of no law or ordinance which forbids pickets from entering the airport, and none has been offered for its attention. The police " no-entry " rule must therefore stand or fall upon their inherent power, if any, to deny to defendants a right of entry concededly available to the public, the denial of entry by the police being based solely on the ground that defendants desired to exercise their constitutional right of free speech, of which picketing is only a form. (*Thornhill* v. *Alabama,* 310 U. S. 88; *People* v. *Muller,* 286 N. Y. 281.) The mere statement of this proposition is sufficient to demonstrate its untenability.

In view of the foregoing, it is unnecessary for the court to pass on defendants' point that even if the city department having jurisdiction over the airport had passed a " no-entry " rule against pickets, such rule would be unconstitutional.

I find the defendants not guilty, and the charges against them are dismissed.