Morris Ploscowe, M.
A group of about 150 people attempted to stage a mass picketing demonstration in front of the Harvard Club on March 30, 1948, at about 4:15 p.m. The employees of the club were on strike. The defendant, who was a waitress and member of the union to which the strikers belonged, had been told to report for picket duty. The group of would-be pickets that she joined did not form an orderly picket line, but milled around in front of the club. As a result, both the sidewalk and the roadway were blocked. Traffic could not move down 44th Street. In consequence, the police attempted to break up the demonstration. The arresting officer testified that he warned the defendant to move on, but that she kept ‘ ‘ pushing and shoving ” toward him all the time. The defendant denied that she had been warned to move on by the officer. She stated that she had been pushed into the gutter by the police and that the crowd had pushed her back against the officer. She also asserted that she could not have moved if she had wanted to, because of the pressure of the crowd. The officer placed her under arrest and charged her with disorderly conduct, a violation of subdivision 2 of section 722 of the Penal Law.
It would have been easier to decide a case of this kind some years ago when both courts and legislators were hostile to picketing by unions in labor disputes. As late as 1921, for example, Chief Justice Taet, speaking for a majority of the Supreme Court, could declare unconstitutional an Arizona statute which prohibited the issuance of injunctions against picketing. For to him, “ Peaceful picketing” was a contradiction in terms, (Truax v. Corrigan, 257 U. S. 312, 340.)
But legal concepts do not remain static. The new era for labor ushered in by the National Labor Relations Act (29 U. S. Code, tit. 29, § 151 et seq.) modified judicial and legislative attitudes toward picketing. Within the last decade, the right to picket peacefully has become firmly established as one of labor’s basic liberties. Thornhill v. Alabama (310 U. S. 88 [1940]) and Carlson v. California, (310 U. S. 106 [1940]) *268 are the keystones of these liberties. For these two cases stand for the proposition that labor has a right to inform the public of its dispute with an employer through peaceful picketing, and that no statute or ordinance which prohibited such picketing or which prohibited pickets from carrying truthful signs concerning a labor- dispute was constitutionally valid. Peaceful picketing, according to these opinions, is an expression of labor’s right of free speech guaranteed by the First and Fourteenth Amendments of the Constitution. “ In the circumstances of our times,” stated (p. 102) Justice Murphy in the Thornhill case, “the dissemination of information concerning the facts of a labor dispute must be regarded as within that area of free discussion that is guaranteed by the Constitution.”
If peaceful picketing is a technique of disseminating information concerning labor controversies which is guaranteed by the Constitution, it cannot be restricted too narrowly by State law. It cannot, for example, be limited to labor disputes between an employer and his own employees. So the Supreme Court has held in American Federation of Labor v. Swing (312 U. S. 321 [1941]). Nor can an employer escape picketing from a union by the device of converting his employees into independent contractors. Even though our Court of Appeals upheld a prohibition against picketing on the ground that no ‘ ‘ labor dispute ” existed within the meaning of New York law, the Supreme Court took a contrary view and stated, “ one need not be in a ‘ labor dispute ’ as defined by state law to have a right under the Fourteenth Amendment to express a grievance in a labor matter by publication ”. (Bakery Drivers Local v. Wohl, 315 U. S. 769, 774 [1942].)[1]
Logically, these décisions seem to authorize a right on the part of labor to picket peacefully any time that it has a grievance which it wishes to call to the attention of the public. But logic is only one factor in determining how far legal principles will apply to particular controversies. Applying strict logic alone, Carpenters Union v. Ritter’s Cafe (315 U. S. 722 [1942]) was wrongly decided, for a bona fide labor dispute existed between the contractor with whom Bitter had contracted to erect a building, and the labor union that was picketing Bitter’s restaurant. But since this secondary picketing violated the *269 anti-trust law of Texas, an injunction restraining such picketing was upheld by a bare majority of the Supreme Court.
This case would certainly bolster the authority of a decision like People v. Bellows (281 N. Y. 67 [1939]), in which our Court of Appeals sustained a conviction for disorderly conduct arising out of picketing in a secondary boycott situation. But People v. Bellows was decided before the Supreme Court had laid down the proposition that picketing was an expression of labor’s right to freedom of speech. Two years later, in the case of People v. Muller (286 N. Y. 281 [1941]), the Court of Appeals reversed a conviction for disorderly conduct in a similar situation by a split decision of four to three. One may doubt whether this case would have been decided the same way if it had come after the decision of Carpenter’s Union v. Ritter’s Cafe (supra). Nevertheless, the majority of the Court of Appeals in People v. Muller (supra), made a far more logical application of the principles of the Thornhill and Carlson cases than did the Supreme Court in the Ritter case.[2]
Through all the decisions of the Supreme Court runs the insistence that if labor is to take its case to the public by picketing, it must be done peacefully. Constitutional guarantees of freedom of speech were never intended to shelter acts of force and violence. So sensitive is the Supreme Court to this requirement of peaceful picketing that in Drivers Union v. Meadowmoor Co. (312 U. S. 287 [1941]), it rejected an obvious compromise of modifying an injunction so that it would prohibit violent picketing and permit peaceful picketing. Instead, it sustained an injunction forbidding all picketing for the State could, in the language of Justice Frankfurter, “ authorize its courts to enjoin acts of picketing in themselves peaceful when they are enmeshed with contemporaneously violent conduct which is concededly outlawed.” (P. 292.)
Mass picketing where it becomes enmeshed in violence or where it results in blocking access to an employer’s place of business is likewise not protected by constitutional guarantees of freedom of speech or freedom of assemblage. Mass picketing even when there is no violence or blocking of access to an *270 employer’s place of business is also subject to the paramount right of the public to a safe and convenient use of the streets. It is the police department which, in the first instance, has the right and duty of taking such steps as will insure the public the free and unhindered use of the streets. The New York City Charter, for example, places upon the police department the duty of dispersing assemblages “ which obstruct the free passage of public streets, sidewalks, parks and places ”. It also requires the police department to “ regulate, direct, control and restrict the movement of vehicular and pedestrian traffic for the facilitation of traffic and the convenience of the public ’ ’. (Greater N. Y. City Charter, § 435.)
A reasonable exercise by the police department of the authority granted to it by these provisions of the City Charter violates no constitutional rights. As Chief Justice Hughes put it in Cox v. New Hampshire (312 U. S. 569, 574 [1941]), The authority of a municipality to impose regulations in order to assure the safety and convenience of the people in the use of the public highways has never been regarded as inconsistent with civil liberties but rather as one of the means of safeguarding the good order upon which they ultimately depend. The control of travel on the streets of cities is the most familiar illustration of this recognition of social need. Where a restriction of the use of highways * * is designed to promote the public convenience in the interest of all, it cannot be disregarded by the attempted exercise of some civil right which in other circumstances would be entitled to protection.”
These principles have been frequently appied by the New York courts. Thus the lawyer defendant in People v. Galpern (259 N. Y. 279 [1932]), who thought that he had every right to be on the sidewalk and talk to a group of friends, discovered that his right was subject to the police officer’s duty to see that the sidewalk was not unduly obstructed for pedestrian traffic. Similarly, where the police had attempted to limit the number of pickets on a busy thoroughfare and the defendant had violated the police officer’s direction, the Appellate Part of the Court of Special Sessions upheld a conviction for disorderly conduct on the ground that while ‘ the right to picket as established by law may not be taken away by police officials, such officials may take measures to prevent the collection of a crowd, including a reasonable limitation of the number of pickets at a given location.” (People v. Ward, 159 Misc. 328 [1936]; see, also, People v. Nixon, 248 N. Y. 182 [1928]; People v. Hippie, 263 N. Y. 242 [1934].)
*271 It is quite clear in the instant ease that the police had the right to take reasonable steps to break up the demonstration in front of the Harvard Club. Forty-fourth Street is a busy thoroughfare, particularly in the late afternoon. The sidewalk in front of the club was blocked and traffic could not move freely as a result of the demonstration. The police officer, therefore, had the right to order the defendant to move on. If she disobeyed that order by deliberately refusing to move, she would have been guilty of disorderly conduct and the arrest would have been completely justified. However, from all the evidence, there is doubt as to whether the police officer did order the defendant to move on. There is doubt that even if this order were given, that it was heard by the defendant. There is also doubt that the defendant could have moved even if she had Avanted to do so, because of the pressure of the crowd.
Accordingly, the defendant is acquitted.

 As Justice Douglas put it in his concurring opinion, “ since ‘ dissemination of information concerning the facts of a labor dipute ’ is constitutionally protected, a State is not free to define labor dispute ’ so narrowly as to accomplish indirectly what it may not accomplish directly.” (P. 777; cf. Cafeteria Union v. Angelos, 320 U. S. 293.)

 Technically, the distinction between the Bellows and Muller cases is that in the former there were no further contractual relations between the company that erected the sign and which was in dispute with the union, and the storekeeper who was being picketed. On the other hand, in the Muller case the storekeeper had a contract for maintenance of the burglar alarm with the company that was in dispute with the union. This is a tenuous distinction upon which to base a difference in decision.