EMPIRE SMOKES, INC., Respondent, v. OLLIE M. FINCH, as Treasurer of Local 264, Bakery Drivers, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, A. F. L.-C. I. O., et al., Appellants.

Fourth Department, May 8, 1957.

*Richard Lipsitz* and *David Reisman* for appellants.

*Dwight Campbell, Jr.,* for respondent.

GOLDMAN, J. Defendant Local 264 and individual defendants have been enjoined from picketing approximately 1,700 establishments where plaintiff's cigarette vending machines are located under lease or license agreements between the plaintiff and the location operators. None of the locations is a party to this action. The court below held that it had jurisdiction over the parties and the subject matter of the action and enjoined the defendants from picketing the locations, but refused to extend the injunction to include the warehouse and principal office of the plaintiff.

The court predicated its conclusion upon findings that defendants participated in unlawful acts, which findings, in our opinion, are not sustained by the evidence. The court further held that there was no unity of interest between the plaintiff and the locations, that there was no labor dispute involved, that the individual defendants were not the employees of the plaintiff and that the action of the defendants in picketing the locations was coercive, unlawful, and was doing irreparable injury to the property of the plaintiff.

On about September 1, 1956, Teamsters' Local No. 264 sought to organize the 17 sales and service employees of plaintiff, Empire Smokes, Inc., (hereinafter referred to as Empire). The individual defendants had all been employees of Empire prior to the strike. From 10 to 12 of the employees joined the union and the business agent of Local 264 requested Empire to negotiate, looking toward a collective contract. Negotiations continued until about November 26, 1956 when an impasse was reached and a strike was called. The union and individual defendants contacted the location operators and used every legitimate effort to persuade them to refrain from doing business with the plaintiff during the period of the strike. Testimony was given by about 35 of the location operators, which evidence is singularly free of any acts or incidents which could properly be determined unlawful, coercive or disorderly.

At the outset, it seems beyond argument the testimony clearly indicated a labor dispute existed within the meaning of section 876-a of the Civil Practice Act. No other reasonable conclusion can be reached than that the dispute itself grew out of a " con-

troversy concerning terms or conditions of employment ". This was amply supported by the testimony of plaintiff's officers as well as others. To permit the plaintiff to discharge the strikers, and by the hiring of new employees, successfully assert that the union no longer represented the majority of the employees in the bargaining unit, would give to the employer a weapon which would defeat any labor controversy. To sustain such a device would unfairly place in the hands of an employer the means by which it could frustrate the legitimate demands of striking employees by eliminating their most effective instrument, peaceful picketing.

The court below felt that in order to protect innocent third parties, who operated the locations, from a loss of custom, it was required to restrain picketing. However, it cannot be doubted that the picketing was directed at the use of the machines and not at the personal operation of the business being carried on at the location. Loss of profits and inconvenience to third parties is often an inevitable consequence of labor disputes. This was recognized by the court in *Schivera* v. *Long Is. Lighting Co.* (296 N. Y. 26) and is accepted law of our State. This principle is ably propounded by the court on pages 32-33 in the following statement: " Every labor dispute has the capacity of injuring noncontestants. Every strike, every stoppage of production or cessation of work due to labor differences, necessarily imposes an involuntary burden of hardship upon the consuming public. That plaintiff suffered inconvenience or injury as a result of the picket line neither renders the union liable (Restatement of Torts, § 809) nor furnishes reason for departing from the State's settled policy. (See *May's Furs & Ready-to-Wear*, v. *Bauer*, 282 N. Y. 331, 340; *Interborough R. T. Co.* v. *Lavin*, 247 N. Y. 65, 74-75; *Exchange Bakery & Restaurant* v. *Rifkin*, 245 N. Y. 260.) If the mere fact of such incidental injury were to give rise to a cause of action, the protection which the Legislature intended to confer upon workingmen by enacting section 876-a would soon disappear, and, indeed, this court has already ruled that the statute applies even though plaintiff alleges that he is not a party to the primary dispute between employer and union. (*People* v. *Muller*, 286 N. Y. 281, 284; *Goldfinger* v. *Feintuch*, 276 N. Y. 281.) "

Further evidence of the reasonableness of the defendants in dealing with the location operators is found in the fact that no locations were picketed where, in the first instance, operators disconnected the machines and refused to dispense cigarettes therefrom. In addition picketing was discontinued in other places where, after an original refusal, the operators ceased to

sell cigarettes from the machines. This proof reinforces the defendants' contention that the picketing was directed to the use of the machines and not to the premises in which they were located.

Inasmuch as the injunction prohibited the striking employees from picketing the locations and from advising, urging or inducing without fraud, violence or threat thereof others to cease patronizing Empire, and from giving publicity to the facts in dispute by means of picketing *et cetera,* it is in direct contravention of the specific requirements of the statute. (See Civ. Prac. Act, § 876-a, subd. 1, par. [f], cls. [5], [10].)

The finding of the court that there was no unity of interest between Empire and the locations is contrary to fact and not in accord with the cases on this question. *Goldfinger* v. *Feintuch* (276 N. Y. 281); *People* v. *Muller* (286 N. Y. 281) and *Englander Co.* v. *Tishler* (280 App. Div. 217) amply sustain this position. The Court of Appeals, in *Goldfinger* v. *Feintuch* (*supra,* p. 286) clearly sanctioned the acts of the defendants in the following language: " Within the limits of peaceful picketing, however, picketing may be carried on not only against the manufacturer but against a *non-union product* sold by one in unity of interest with the manufacturer who is in the same business for profit. * * * Where the manufacturer disposes of the product through retailers in unity of interest with it, unless the union may follow the product to the place where it is sold and peacefully ask the public to refrain from purchasing it, the union would be deprived of a fair and proper means of bringing its plea to the attention of the public."

It is unnecessary to pass upon the propriety of the use of one of two types of placards in picketing the locations. Upon the argument of this appeal counsel for the appellants stated that in view of. the respondent's objections to one of the placards, it would not be used in the future.

Upon the trial of the issues, the defendants strongly urged, as an absolute defense to the proceeding, the question of Federal pre-emption of the dispute at bar. The court made no finding on this question and merely concluded that it, as a State court, had jurisdiction. The court did find, however, that Empire had filed charges with the National Labor Relations Board and that " such Board declined to act with respect thereto ". Defendants contend on this appeal that the decisions of the Supreme Court of the United States, starting with *Garner* v. *Teamsters Union* (346 U. S. 485) and carrying through the many decisions on this question, including the three recent decisions of March 25, 1957 (*Guss* v. *Utah Labor Bd.,* 353 U. S. 1; *Meat Cutters* v.

*Fairlawn Meats,* 353 U. S. 20; *San Diego Unions* v. *Garmon,* 353 U. S. 26) required the Special Term to hold that it was without jurisdiction, the matter being controlled entirely by the National Labor Relations Act. This argument presents an interesting jurisdictional question which need not be decided here. Purely on the merits, the record requires a reversal and a denial of the motion.

All concur. Present — McCurn, P. J., Vaughan, Kimball, Bastow and Goldman, JJ.

Order reversed on the law and facts, with $50 costs and disbursements, and motion denied, with $10 costs.