PAINE LUMBER CO., Limited, et al. v. NEAL et al.

(District Court, S. D. New York. November, 1913.)

1. CONSPIRACY (§ 8*)—COMBINATION IN RESTRAINT OF TRADE—RIGHT TO SUE—THIRD PERSONS.

At common law a third person had no right of action for damages because of an agreement or combination in restraint of trade.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 7–11; Dec. Dig. § 8.*]

2. CONSPIRACY (§ 8*)—AGREEMENTS IN RESTRAINT OF TRADE—ENFORCEMENT.

In a suit to restrain the enforcement of an agreement in restraint of trade, it is not sufficient at common law to show that an agreement may create a monopoly, may be in restraint of trade, or may be opposed to public policy, since, agreements of that nature being unenforceable, the law will not aid their enforcement, but they are not illegal in the sense of giving a right of action to third persons for injuries sustained.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 7–11; Dec. Dig. § 8.*]

3. INJUNCTION (§ 114*)—AGREEMENTS IN RESTRAINT OF TRADE—SHERMAN ANTI-TRUST ACT—ENFORCEMENT.

Though an agreement between members of certain carpenters' and woodworkers' unions binding their members not to work with building trim manufactured in nonunion factories was in restraint of trade, and in violation of the Sherman Anti-Trust Law (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200], and General Business Law N. Y. (Consol. Laws, c. 20) § 340, prohibiting such agreements, a suit to enjoin the enforcement thereof could be maintained only at the instance of the United States or the state of New York, and not by a third person injured thereby.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 202–220; Dec. Dig. § 114.*]

4. CONSPIRACY (§ 30*) — PREVENTION OF COMPETITION — "ACT INJURIOUS TO TRADE."

Penal Law N. Y. (Consol. Laws, c. 40) art. 54, § 580, subd. 6, provides that, if two or more persons conspire to commit any act injurious to trade or commerce, each of them is guilty of a misdemeanor. *Held*, that the gist of the offense is an agreement to prevent competition regardless of the in-

tention of the parties; the prevention of competition in business being an "act injurious to trade" within the statute.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 53–57; Dec. Dig. § 30.*]

5. INJUNCTION (§ 114*)—COMBINATION IN RESTRAINT OF TRADE—RIGHT TO SUE.
Though an agreement between certain carpenters' and woodworkers' unions to refuse to use building trim manufactured in nonunion factories was in restraint of trade and constitute a misdemeanor in violation of Penal Law N. Y. (Consol. Laws, c. 40) art. 54, § 580, subd. 6, prohibiting a conspiracy to commit acts injurious to trade or commerce, a private individual was not entitled to a suit to restrain the enforcement of such agreement, in the absence of proof that it was aimed at or affected him injuriously as distinguished from the general public.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 202–220; Dec. Dig. § 114.*]

In Equity. Suit by the Paine Lumber Company, Limited, and others, against Elbridge H. Neal and others. Bill dismissed.

Austin, McLanahan & Merritt, of New York City (Walter Gordon Merritt, of New York City, and Daniel Davenport, of Bridgeport, Conn., of counsel), for complainants.

Eidlitz & Hulse and William Butler, both of New York City (Frederick Hulse, of New York City, of counsel), for defendants Members Mfg. Woodworkers' Ass'n and another.

Charles Maitland Beattie and William P. Maloney, both of New York City, for defendants Neal and others.

Charles J. Hardy and Frederick P. Whitaker, both of New York City, for defendant James Elgar, Inc.

MAYER, District Judge. Contemporaneously with the final hearing of this suit, Irving v. Joint District Council, 209 Fed. 471, was argued on final hearing before Judge Ward. In that case equitable relief was sought on behalf of a single firm because of acts claimed to be specifically directed against that firm pursuant to a combination or conspiracy and resulting in damage to it.

Here both the complaint and the relief sought are more comprehensive. There is no question involving an existing strike. The record is barren of any proof of acts of violence, nor is there satisfactory proof that the agreements and acts complained of were, at the time of the commencement of the suit, directed against these particular complainants. Plainly and briefly stated, the suit is brought on behalf of nonunion manufacturers to settle in a private litigation an economic question of ceaseless importance in respect of which in the particular trade here involved there has been a long and bitterly (though peacefully) fought struggle; each side contending for what it believed to be its rights and welfare.

The bill was verified in February, 1911, and process was duly served shortly thereafter.

The complainants, eight in number, and residents of states other than New York, are manufacturers of wood trim, sash, and other similar wood products. Six of these complainants have and have had

business with customers in New York, and two allege that they are ready and able to dispose of their products in New York City if the channels of commerce are kept free from unreasonable obstruction.

Twenty-four defendants named in the bill are alleged to be officers or agents of a voluntary association, known as the United Brotherhood of Carpenters and Joiners of America. Huber, the president, and Duffy, the secretary of the association, were not served with process, and are therefore not before the court. The other twenty-two defendants, representatives of labor, are sued individually and as officers or agents of an association known as the Joint District Council of New York and Vicinity of the United Brotherhood of Carpenters and Joiners of America. Five defendants are union manufacturers of trim, door, and sash in New York City. The remaining defendants, over one hundred in number, are master carpenters whose business is to install trim, doors, sash, and other woodwork in buildings.

The bill of complaint sets forth, among other things, an agreement between the Master Carpenters and the Joint District Council (Exhibit B). The object of that agreement is:

"To prevent any strike or lockout, and to insure a peaceable adjustment and settlement of any and all grievances, disputes and differences that may arise between any employer in the Master Carpenters' Association and the mechanics affiliated with the Joint District Council of Greater New York."

The agreement sets out the terms upon which the employers will employ and the employés work, and provides for the arbitration of disputes. It is one of these terms (which the parties have settled upon) to which complainants object. It reads:

"There shall be no restriction against the use of any manufactured material except nonunion or prison-made."

The bill likewise sets forth an agreement between Manufacturing Woodworkers' Association and the Joint District Council (Exhibit C). The purpose of the agreement is thus stated:

"The intent of this agreement is to lay foundation for peace in the mill work industry, and the bringing about of uniformity as to hours, wages and general conditions, and to provide for the settlement of any and all grievances that may arise between the Manufacturing Woodworkers' Association, parties of the first part, engaged in the manufacturing of doors, sashes, window frames, moulding, interior trim, etc., and the International Union, United Brotherhood of Carpenters and Joiners of America, general offices, Indianapolis, Indiana, and its subordinate union known as Joint District Council of New York, parties of the second part."

The arbitration of disputes is provided for, and the agreement further sets forth the terms and conditions upon which work will be carried on. The important provisions to be noticed are one whereby the unions agree "that none of their members will erect or install nonunion or prison-made material," and another whereby the employers agree that the members of the Brotherhood of Carpenters are "to be employed exclusively in the mills of the Manufacturing Woodworkers' Association."

The vital offense alleged in the bill (Complt., par. 25) is that, with the exception of the "contractors" (the Master Carpenters), all the defendants "have for many years past been engaged in an oppressive

and malicious scheme or conspiracy to prevent the pursuit or exercise of the trade of carpentry by any person in any state of the United States who is not a member of said United Brotherhood and one of its subordinate bodies, and contrary to the laws of Congress of July 2, 1890, relating thereto, and the laws of the state of New York, to prevent and restrain each of your orators and all other employers of any carpenters not belonging to said brotherhood from engaging in interstate trade or commerce to sell or supply goods for sale, delivery, use, and installation where outside of the state of their manufacture, because they so employ one or more carpenters who are not members of said brotherhood, and to thereby compel and coerce each of your orators and all other woodworking mills and employing carpenters or builders in the United States of America, by the injury so unlawfully inflicted on their respective businesses, to operate what is called a closed or union shop, and to discharge and refuse to employ any carpenter who is not a member of and does not pay tribute to and submit to the regulations and restrictions of said United Brotherhood and some one of its local affiliated unions."

The Master Carpenters being excepted from the charge of conspiracy, the charge is therefore made only against the 22 agents of the Joint District Council, the 4 members of the Woodworkers' Association, and David W. O'Neil.

It is further alleged that in pursuance of and for the purpose of making effective the combination and conspiracy:

1. The brotherhood and Joint District Council have adopted the rule that no member of the brotherhood should use or work upon nonunion trim, and a violation of the rule subjects the member to the penalty of a fine. This allegation is admitted.

2. The brotherhood has an understanding with the other trades that such trades will join in sympathetic strikes if requested so to do where nonunion trim is being used. This is denied by the representatives of the unions and not established.

3. The alleged conspirators have instigated and joined in strikes where the complainants' materials were being used. This is denied, except that it is admitted in the answer of the Joint District Council's agents that members of the brotherhood have refused to work on the complainants' products. The testimony shows that on several occasions members of the brotherhood have quit work on jobs when complainants' material was being used.

4. Builders and architects have been coerced by fear of strikes caused by the conspiracy of certain of the defendants to refuse to purchase complainants' products. This is denied by the labor defendants. It is entirely clear from the record that the known attitude of the union toward nonunion trim has deterred owners and builders who wish to employ brotherhood men to erect trim from purchasing that which they refuse to erect, and this course has been taken for self-protection and in view of the exigencies of this trade situation.

5. The Joint District Council would not enter into any agreement with the Master Carpenters until some clause enjoining the use of nonunion material was inserted, and the Master Carpenters were coerced

to enter into the agreement (Exhibit B). The Master Carpenters answer that the representatives of the workmen insisted upon a clause substantially as is contained in the agreement, but they and the labor defendants deny that the carpenters were coerced into making the agreement. The situation disclosed amounts to all intents and purposes to coercion even though the purpose of the Master Carpenters was commendable and to accomplish industrial peace.

6. The agreement (Exhibit C, supra) between the Woodworkers and Joint District Council was made. This allegation is admitted.

7. "Unfair lists" have been circulated among architects, builders, and contractors of New York City. This is denied, and there is no proof of any instances where complainants have been placed on "unfair lists."

8. Printed lists containing the names of firms and corporations who employ union labor in their mills have been circulated in New York City by the alleged conspirators preceded by a statement whose purpose was to indicate the desirability of employing union men in order to avoid labor troubles. The labor defendants admit that such lists have been prepared and in some cases preceded by the statement above referred to, but assert that the use of such statement had been discontinued before the commencement of this action. No proofs were submitted disproving that assertion.

The testimony is voluminous, but I think the essential facts may be summarized as follows: (1) The journeymen carpenters in the borough of Manhattan and in parts of the borough of Brooklyn very generally belong to the Brotherhood of Carpenters. (2) Owing to the fact that members of the brotherhood refuse to work with nonunion members and to the further fact that employers in the building trades deem it wise to employ brotherhood men, it is difficult and under ordinary circumstances impracticable to erect carpenter work in the borough of Manhattan and in parts of the borough of Brooklyn except with union labor. (3) That the Brotherhood of Carpenters has a by-law that its members will not erect material made by nonunion mechanics. (4) The Brotherhood of Carpenters has given notice that its men will abide by this by-law. (5) The by-law is enforceable by fine. (6) On several occasions in the past few years the members of the brotherhood have quit work where complainants' products were being used and where the products of other so-called nonunion mills were being used. (7) The enforcement of the by-law in question by the Brotherhood of Carpenters and the provision in the agreement with the master carpenters relative to the use of nonunion trim have lessened the sale of complainants' products in the borough of Manhattan and in some parts of the borough of Brooklyn. (8) The workmen have adopted and pursued the policy complained of to better their condition in a continuing economic struggle, with no malice to the particular complainants herein, but as part of a plan to accomplish a nation-wide unionization in their trade. (9) The contractors or master carpenters have entered into their trade agreements after elaborate negotiation and for the purpose of establishing and maintaining peaceful relation which shall obviate strikes and other disturbing labor troubles.

The relief sought by complainants is:

1. That the defendants (other than the Master Carpenters) be enjoined from "combining, conspiring, and confederating together to refuse to handle or work upon material produced or manufactured by the complainants, or any of them, because they are not made under union conditions, and from publishing, circulating, enforcing, and attempting to enforce the provisions of the by-laws of the District Council of New York and vicinity, which provide as follows: 'Any member proven guilty of using the products of any person, firm or mill who have been declared unfair by their district council, or working for any person, firm or mill who have thus been declared unfair, shall be fined $10 for each offense.' And from publishing, circulating, enforcing, and attempting to enforce that part of the by-laws of the United Brotherhood of Carpenters and Joiners of America, which provide as follows: 'It shall be the duty of all district councils and local unions wherever possible to prevent the members under their jurisdiction from encouraging the use of any unfair material by handling the same.' And from enforcing or attempting to enforce or inflicting or threatening to inflict any injury, penalty, or liability, where in the nature of a fine, or suspension, or expulsion from any labor organization, or otherwise, against any person who works upon materials furnished by any of your complainants, or against any person who works for any employer who purchases materials from any of your complainants, or against any person who works upon any building where the materials of any of your complainants are being installed, or about to be installed. From inducing or attempting to induce any person or persons whomsoever to decline employment or cease employment, or not to seek employment under any person, firm, or corporation, because such person, firm, or corporation may have purchased or proposed to purchase materials from the complainants or any of them, or because of materials furnished by the complainants or some of them were being used on or in connection with some building where said persons are doing work, and from in any way inducing or attempting to induce any person or persons to refuse to install, handle, or work upon materials manufactured by your complainants, or any of them. And from making, communicating, or circulating any statement, orally or in writing, that the defendants, or members of any union of workingmen, will refuse to work upon any material unless said materials are constructed under strict union conditions. And from requesting customers, or those who might become customers of the complainants, not to purchase the products of your orators, or any of them, because they do not employ members of said United Brotherhood of Carpenters and Joiners of America exclusively at the work of carpentry, or do not use the union label of said United Brotherhood, and from requesting any persons who might be customers of the complainants, or any of them, to buy union materials, so that no controversy or difficulty can arise on account of the use of nonunion woodwork. From giving notice, verbally or in writing, to any person, firm, or corporation, to refrain from purchasing merchandise or carrying out contracts for the purchase of merchandise manufactured by your complainants, or any of them, under threats that if such merchandise is purchased, or said contracts carried out, they will cause the person so notified loss or trouble, or that they will cause persons employed by such persons so notified to withdraw from their employment, or that they would cause persons employed by others upon buildings where said persons so notified are doing work to withdraw from all work upon said buildings. From publishing, circulating, or otherwise communicating, either directly or indirectly, in writing or orally to each other, or to any other person, firm, or corporation, any statement or notice of any kind or character whatsoever, calling attention to the fact that the complainants, or any of them, or their products, or any of them, are or were, or have been declared unfair, or are on any unfair list, or that your complainants, or any of them, should not be patronized or dealt with, or their products purchased, used, handled, worked upon or dealt in because made in an open or nonunion shop. And from conspiring, agreeing, or combining together to restrain or destroy the interstate business or trade of the complainants, or any of them, in order to compel them to refuse to employ any carpenters who are not members of said United

Brotherhood, and from doing any and all acts in furtherance of said combination, and any and all acts to interfere with or discourage the sale or disposition of the products of the factories of the complainants, or any of them, or the installation or handling thereof, for the purpose of compelling the complainants, or any of them, to refuse to employ any carpenters who are not members of said United Brotherhood. And from using any and all ways, means, and methods of doing any of the aforesaid forbidden acts and from doing any of the forbidden acts, either directly or indirectly, or through bylaws, orders, directions, or suggestions to committees, associations, officers, agents, or otherwise.

"2. That section 2 of article 4 and the second paragraph of article 3 of said agreement (Exhibit B), entered into on or about the 30th day of October, 1909, between the Master Carpenters' Association of the City of New York, party of the first part, and the Joint District Council of Greater New York, party of the second part, be declared void as imposing an unlawful restraint upon trade, contrary to the laws of the state of New York in such case made and provided, and contrary to the laws of the United States relating to restraints of interstate commerce, and as constituting a part of the wrongful combination or conspiracy to injure your orators.

"3. And that the parties to said agreement (Exhibit B), their attorneys, agents, and associates, be enjoined from carrying out or pursuing said section 2 of article 4 and the second paragraph of article 3 of said agreement so far as the same forbid the purchase, use, or installation of products manufactured by any of your orators, and inducing or persuading, or attempting to induce or persuade, any person, firm, or corporation to extend, renew, observe, carry out or comply with the terms of said section 2 of article 4 so far as the same prohibit the purchase, use, or installation of nonunion woodwork by the members of the Master Carpenters' Association and provide for the refusal of the members of said district council to work upon the same."

At the outset the jurisdiction is attacked because of lack of necessary diversity of citizenship; but that question, I think, is disposed of in this court by the order of Judge Coxe for a preliminary injunction and by Judge Ward's opinion in 180 Fed. 896. I think there is grave doubt as to whether the relief prayed for in paragraph 2, supra, can be granted in a private suit to which the Joint District Council, one of the signers of the agreement, Exhibit B, is not a party. It will also be noted that, while the effect of Exhibit C is sought to be restrained, there is no application to declare void the agreement itself. Counsel, however, on the argument urged a decision on the substantial questions involved, and the importance of the subject-matter invites such a decision.

For the complainants to succeed they must establish: (1) An agreement offensive to the common law or a state or federal statute; (2) or any acts done in pursuance thereof; and (3) such injury as will warrant injunctive relief in a litigation between private parties.

[1] Assuming the agreement and its operation to be a combination in restraint of trade, the common law gives no right of action to a third person.

[2] "In considering the legal questions arising in this case, it must be borne in mind at the outset that it is not sufficient to show that the agreement in question may create a monopoly, may be in restraint of trade, or may be opposed to public policy. Agreements of that nature are invalid and unenforceable. The law takes them as it finds them, and as it finds them leaves them; but they are not illegal in the sense of giving a right of action to third persons for injuries sustained." Nat. Fireproofing Co. v. Mason Builders' Ass'n, 169 Fed. at page 263, 94 C. C. A. 539, 26 L. R. A. (N. S.) 148.

[3] The remedy, if any, must therefore be found in statutes which, as I understand the trend of modern decisions, are said to be declaratory of the common law but afford new or additional remedies. This brings us to a consideration of the federal so-called Sherman Anti-Trust Law and the New York state Anti-Trust Law (General Business Law, § 340). I agree with Judge Ward, in his opinion filed contemporaneously herewith, that:

"There can be no question, first, that a combination does exist between the various local unions which constitute the United Brotherhood; second, that one of the purposes of the combination is to compel the unionization of all manufacturing carpenter shops; third, that the object is to restrain competition between open shops and union shops; and, fourth, that this object is to be accomplished principally by an agreement to refuse to work on any job where nonunion trim is used."

I further agree that the combination in the case before him results in directly restraining competition between manufacturers and operates to restrain interstate commerce in violation of the above referred to federal and state statutes.

As the agreement (Exhibit B) between the Joint District Council and the Master Carpenters and the agreement (Exhibit C) between the Manufacturing Woodworkers' Association and the United Brotherhood and the Joint District Council are but steps in the course of the combination and effective extensions of its purpose and results, I am of the opinion that these agreements are also condemned by the two statutes referred to—and this irrespective of the motives which actuated any of the defendants, masters or workmen.

But injunctive relief may be had under either statute only at the instance of the United States or the state of New York, as the case may be, and therefore complainants cannot recover in this suit. Nat. Fireproofing Co. v. Mason Builders' Ass'n, supra.

[4] As I cannot agree with the contention of the counsel for complainants that either subdivision 5 of section 580 or section 530 of the Penal Law is applicable to the case at bar, there thus remains for consideration only subdivision 6 of section 580 of the Penal Law of New York. Subdivision 6 of section 580 of article 54 of the Penal Law (formerly section 168, subd. 6, of Penal Code) has long been on the statute book. It provides:

"If two or more persons conspire to commit any act injurious * * * to trade or commerce * * * each of them is guilty of misdemeanor" (formerly part of section 168 of the Penal Code).

The prevention of competition in business has been held to be an act injurious to trade in contemplation of law. Kellogg v. Sowerby, 190 N. Y. 370, 83 N. E. 47; People, etc., v. Sheldon, 139 N. Y. 251, 34 N. E. 785, 23 L. R. A. 221, 36 Am. St. Rep. 690.

It is further held by the New York Court of Appeals:

"A civil action is maintainable by one who suffers injury as the result of a conspiracy forbidden by the criminal law to recover the damages which he has sustained at the hands of the parties to the combination."

See, also, In re Debs, 158 U. S. at page 593, 15 Sup. Ct. 900, 39 L. Ed. 1092.

Under this statute the motive of the parties is immaterial. The gist of the offense is the agreement to prevent competition.

"In order to guard against any possible misapprehension, however, on another trial, it is proper to say that we do not think that good motives on the part of those who enter into a combination in restraint of trade save it from the condemnation of the law of this state. People v. Sheldon, supra. The fact that the parties to an agreeement of such a character may have honestly believed that it would be beneficial instead of injurious to commerce does not render it legal. The law denounces it if it is designed to prevent competition and will have that effect whatever the intent of the parties." Kellogg v. Sowerby, supra.

[5] Without wishing to speculate obiter, it would seem that, if there be a conspiracy to commit any act injurious to trade or commerce, the offense is indictable, irrespective of injury to a particular person. The theory is that the people at large are injured and the redress is in their hands, acting through constituted authority. But before a private litigant may recover he must show either that he has suffered special injury as the proximate result of the wrong or that the conspiracy was directed against him. Cranford v. Tyrrell, 128 N. Y. 341, 28 N. E. 514; Kellogg v. Sowerby, supra; National Fireproofing Co. v. Mason Builders' Association, supra. As I read the Kellogg Case, there might have been a criminal prosecution because of the agreement, irrespective of Kellogg's rights or status; but Kellogg could not recover money damage if it could be shown that, at the formation of the conspiracy, it was not intended to injure him. Conspiracy is a continuing crime, however, and, once the agreement is formed, it seems to me that if particular acts are directed against a particular person so that he suffers a direct or special injury, he is the victim of a conspiracy and, however impersonal the original situation may have been, the intent to injure may be inferred from the fact that injury is directly inflicted by specific acts on the particular person and in pursuance of the agreement to do acts to injure trade or commerce by preventing competition. But the public generally, as distinguished from one specially injured, must look to the sovereign for redress. So, here, it is true that the complainants may be injured by the general situation; but theirs is not a special injury in the sense of Cranford v. Tyrrell, supra, nor of the Irving Case. Assuming, for the purpose of illustration, the agreement complained of to be unlawful, it was impersonal and intended to accomplish a general result as distinguished from selecting these particular complainants as the object of its operation. National Fireproofing Co. v. Mason Builders' Association, supra.

In such circumstances the policy of the lawmaking power (here, Congress and the New York Legislature) seems to be to remit these problems to the responsible and duly selected public officials. A decree in a litigation at the instance of the government or the state is binding universally to all practical intents and purposes. It is presumably in the public interest as distinguished from any individual interest and operates for the benefit of all (as distinguished from meeting a particular instance of wrong or injury) on a method or manner of conducting business whether the complaint be against employer or employé.

Of the many cases cited I find none authoritative where a general

business situation in the case of employers or a general trade situation in the case of employés was corrected by injunction at the instance of private suitors. Ample remedy is provided at common law or by statute for recovery of money damage in actions by private litigants. The courts have time and again extended the equity arm to prevent the commission or continuance of injury directed against particular persons and have protected employers against violence and sympathetic strikes; but where the purpose of an injunction is, as in the case at bar, to attempt to control a large body of men generally to work or not to work on a class of goods or in a kind of manufacture (as distinguished from a specific instance or instances as above discussed), the remedy of injunction is not to be granted in a litigation between private parties.

Finally, it may be remarked that, in any event, on this branch of the case, the complaint does not seek an injunction against the Master Carpenters nor does the proof justify the granting thereof.

The bill is dismissed, with costs.