MAYER BROS. POULTRY FARMS, Appellant, *v.* ELY MELTZER, Individually and as President of the Poultry Shochtim Union of Greater New York, Local 370, an Unincorporated Association, et al., Respondents, et al., Defendants.

First Department, June 30, 1948.

*Allan Rogow* of counsel (*George B. Balamut* and *Judson W. Pearl* with him on the brief; *Newman & Bisco,* attorneys), for appellant.

*David I. Ashe* of counsel (*Ashe & Rifkin,* attorneys), for respondents.

VAN VOORHIS, J. The plaintiff, in the State of New Jersey, is engaged in the business of slaughtering, freezing, packaging and selling kosher poultry, according to allegations in the complaint. It is further alleged that 'during the latter part of 1947, plaintiff changed its policy of disposing of its frozen poultry through caterers, and other institutional buyers, and prepared to sell exclusively to retail kosher butcher stores and frozen food stores. This entailed packaging its products in individual packages, for eventual purchase and consumption by the public. Plaintiff took steps to enter and develop the New York City market, including the leasing of office space in the city of New York, contracting for advertising, hiring a sales manager and salesmen for said territory, obtaining trucking service, and arranging with retailers for the installation of suitable freezing units to preserve the frozen poultry while awaiting sale in their stores. The complaint alleges that a substantial expenditure of money was made for these purposes; that its frozen poultry actually was sold to numerous kosher retail butcher stores and frozen food stores, and that there was general retailer and consumer acceptance of its products in this city. Defendant has picketed the retailers handling plaintiff's products, in an endeavor to monopolize the market for the benefit of operatives in New York City by excluding all poultry that has been killed elsewhere, and is alleged to have been so successful in doing so that all kosher butcher shops and retail stores in the city of New York have either discontinued or refused to handle plaintiff's poultry.

This action has been brought for an injunction, to restrain the defendant union from interfering with the plaintiff's business by preventing the kosher retail butcher shops and retail food stores in New York City from buying its frozen poultry.

Three appeals by plaintiff are before this court: (1) from an order dismissing the complaint on the ground that it fails to state facts sufficient to constitute a cause of action against the defendant union; (2) from an order dismissing the complaint on similar grounds as against the individual defendants Ely Meltzer and George Lederman, and (3) from an order denying plaintiff's motion for a temporary injunction for the relief demanded in the complaint. The order dismissing the complaint as against the individual defendants should be affirmed without further comment. The rest of this opinion is concerned with whether the complaint was rightfully dismissed as against the union, and whether plaintiff's motion for a temporary injunction against defendant union should have been granted.

The defendant union is known as Poultry Shochtim Union of Greater New York, Local 370 (hereinafter described as the defendant), which is affiliated with Amalgamated Meat Cutters and Butcher Workmen of North America, A. F. of L. "Shochtim" is the plural of "shochet", who is a Hebrew religious official, certified in writing by one or more rabbis as being qualified to slaughter animals in accordance with the ritual requirements and precepts of the Hebrew Orthodox faith.

Plaintiff's poultry is slaughtered and frozen in New Jersey by a duly authorized shochet, and is conceded to be kosher. There is consequently no religious question in this case. It has been stated that in order to conform to the Talmud, meat and poultry must be slaughtered in the same city in which it is consumed, but manifestly no such tenet is recognized by the Orthodox Hebrew community, nor does such a contention appear to be urged seriously in the affidavits. It is not contended that the mere circumstance that meats or poultry are frozen deprives them of the religious sanction to which they are otherwise entitled.

There is no labor dispute between these parties. The controversy involves no existing nor prospective agreement concerning employment, wages, hours or working conditions. The defendant is not seeking to enroll plaintiff's employees as members of its union, which would be impossible, in any event, inasmuch as defendant's membership are required to be New York City operatives, whereas plaintiff's poultry is slaughtered in New Jersey. There is no question concerning the handling

of nonunion products or of inter-union rivalry. Plaintiff's employees are members of locals affiliated with the same parent union as the defendant. The shochet who slaughters plaintiff's poultry in New Jersey is a member at large of the same parent union. It is not necessary to consider whether, or to what extent, it would alter the result if some of these circumstances were absent. This is not a labor dispute under the broadest construction of that term.

The purpose of defendant's activities which are sought to be enjoined, as alleged in the complaint and moving affidavits and admitted in an affidavit by defendant's president, is to keep away from the New York City market all frozen kosher poultry slaughtered elsewhere. Plaintiff's frozen products had been making inroads in this area, and were evidently resulting in reductions in prices to consumers and in the quantity of poultry slaughtered in New York City. Defendant's aim is to limit this market to poultry which is slaughtered in this city, so as to obtain better wages due to a more favorable economic climate than would otherwise prevail.

The defendant contends that since wages may indirectly be affected, this is a legitimate labor objective. It is true that the pay of the shochtim from their employers varies with the quantity of animals which they kill, and that their remuneration is affected by the number of fowl that they slaughter. This is not different in principle from the basis on which any piece-worker is paid, and it does not transform into a labor matter every economic question affecting the volume of the employer's business. The defendant's contention overlooks the fact that there is no dispute concerning wage scales. It does not appear that any demands for a higher rate of pay have been made against the employers of defendant's members, let alone against plaintiff.

A private embargo to prevent foodstuffs from entering New York City is not a lawful objective, and is not made so by using procedures which would be legitimate if directed toward the accomplishment of other purposes. The effectiveness of this embargo is attested by the number of kosher retail stores enumerated in plaintiff's moving affidavits which have discontinued buying plaintiff's products, since defendant has been picketing their places of business. The effect of the picketing was drastically to curtail the sales of all of the wares of these stores and not merely their sales of plaintiff's poultry. Many of their regular customers would not cross a picket line, regardless of the nature or justice of the dispute. It is uncontradicted

that these and other stores were told that they must return all of plaintiff's products, and accept and sell no more of them. The effect was what had been planned and expected. The stores which had taken plaintiff's products returned or disposed of them, and discontinued all future purchases. Word spread throughout the trade to prospective customers that if they handled plaintiff's products they would be similarly treated. Moving affidavits by retailers have been submitted verifying these facts.

Except under the police power, even the Legislatures of the States are not permitted to erect embargoes, which is a prerogative of the Congress alone, and even that is forbidden except against foreign trade (U. S. Const., art. I, §§ 8, 10). If the courts were to tolerate the erection of effective barriers of this sort by employers or employees whenever either shall think it to be to their economic interest to do so, what has been done in this case respecting poultry could be done with regard to other kinds of food or merchandise. In the case of foodstuffs alone, the disastrous consequences of such embargoes need not be left to the imagination, in a community which is as dependent upon outside sources of supply as the city of New York. That is the interest of the consuming public in this issue. The law does not ignore these realities.

The complaint has been dismissed, and a temporary injunction refused by Special Term upon the ground that, regardless of whether a labor dispute exists, as defined by State law, the Supreme Court of the United States has held in *Bakery & Pastry Drivers Local* v. *Wohl* (315 U. S. 769) and the Court of Appeals in *People* v. *Muller* (286 N. Y. 281), that peaceful picketing unaccompanied by false statements, is protected under all circumstances by the Fourteenth Amendment to the Constitution of the United States guaranteeing the right of freedom of speech. On appeal, respondent further relies upon *Allen Bradley Co.* v. *Union* (325 U. S. 797). That case held that it is in violation of the Sherman Anti-Trust Act for labor unions, and their members, to further their own interests as wage earners by combining with manufacturers, and other employers, to exclude out of state competition. The injunction which had been granted by the District Court was limited, however, so as not to enjoin the union from doing this by itself without complicity with an employer or employers. These cases require further discussion of these problems.

*Allen Bradley Co.* v. *Union* bears considerable resemblance to the present case insofar as the facts are concerned. It is

urged that the refusal by the Supreme Court of the United States to enjoin the union alone from engaging in the activities which were prohibited if performed in combination with non-labor groups, precludes the issuance of an injunction against the defendant union and its members in the case at bar. We have arrived at a different conclusion.

In the first place, there was no controversy over this point in the *Allen-Bradley* case, since the only activities there sought to be enjoined were carried on by the union in conjunction with employers; in the decision of the issue it was not necessary to consider what would have been the result if the union had acted alone, and the employers had stood aside as silent co-beneficiaries, participating only in the fruits of the enterprise.

In the second place, the *Allen-Bradley* suit was brought under the Sherman Antitrust Act, as modified by the Clayton Act, and as further modified by the Norris-LaGuardia Act. The Supreme Court recognized that after the adoption of the Clayton Act, but before the Norris-LaGuardia Act, secondary boycotts were held to be in violation of the Sherman and the Clayton Acts. (*Loewe* v. *Lawlor*, 208 U. S. 274, 303–304; *Duplex Co.* v. *Deering*, 254 U. S. 443; *Bedford Cut Stone Co.* v. *Journeymen Stone Cutters' Assn.*, 274 U. S. 37.) The opinion in the *Allen-Bradley* case (325 U. S. 797, 805, *supra*) continues: " Again the unions went to Congress. They protested against this Court's interpretation, repeating the arguments they had made against application of the Sherman Act to them. Congress adopted their viewpoint, at least in large part, and in order to escape the effect of the *Duplex* and *Bedford* decisions, passed the Norris-La Guardia Act, 47 Stat. 70." It thus appears that the antitrust laws, as at present interpreted by the United States Supreme Court, have been limited and restricted by the Congress in their effect so as to remove from their scope the type of restraint of trade represented by the secondary boycotting which had been held to be in restraint of trade in the *Loewe, Duplex* and *Bedford* decisions. This exclusion from the impact of these Federal statutes, the first of which was enacted to give the Federal courts jurisdiction to apply the common-law doctrines against monopoly and restraint of trade where interstate commerce was involved (*United States* v. *Addyston Pipe & Steel Co.*, 85 F. 271 [TAFT, J.]), does not have the effect of abrogating such rules insofar as they have been adopted and remain in force in the several States. The secondary boycott decisions of the Supreme Court of the United States, before the adoption of the Norris-LaGuardia

Act, emphasize that such activities are in restraint of trade, and would have continued to be held so by the Federal courts under the antitrust laws, unless their jurisdiction under said acts over that phase of the subject had been withdrawn. This withdrawal has left in force the statute and common law of the States upon the same subject, which in many instances antedated the adoption of the Sherman Act, and the power of the State courts to enforce their own law remains, even in cases involving interstate commerce, where the Federal Government has not occupied the entire field (*Standard Oil Co.* v. *Tennessee*, 217 U. S. 413, 421). In that case the court overruled the following contention: " It is said that as the only illegal purpose that can be attributed to this agreement is that of protecting the defendant's oil against interstate competition, it could not be made the subject of punishment by the State; that the offense, if any, is against interstate commerce alone.''

The question whether State jurisdiction has been ousted is accustomed to arise where a State has imposed a burden upon interstate commerce (e.g., *Missouri ex rel. Barrett* v. *Kansas Natural Gas Co.*, 265 U. S. 298), not where, as here, the State law prevents burdens from being laid upon commerce, whether interstate or intrastate (*South Carolina Highway Dept.* v. *Barnwell Bros.*, 303 U. S. 177, 189; *Parker* v. *Brown*, 317 U. S. 341). An intention of Congress to exclude States from asserting their police power must be clearly manifested (*Allen-Bradley Local* v. *Board*, 315 U. S. 740).

The present case involves interstate commerce, inasmuch as the frozen poultry is imported into New York City from New Jersey; but the circumstance that it comes from without the State is coincidental, inasmuch as the barrier which the defendant has established applies equally to poultry slaughtered in Westchester County, for example, or in any of the other counties in this State.

In *Leader Theatre Corp.* v. *Randforce Amusement Corp.* (186 Misc. 280, affd. 273 App. Div. 844) there was occasion to consider the status of section 340 of the General Business Law, outlawing contracts or combinations for monopoly or in restraint of trade, in the light of the Federal antitrust laws. It was stated at the Trial Term, per Botein, J. (pp. 283–284): " It is now well established that States, under their police power, can enact and implement legislation which affects interstate commerce, when such commerce has significant local consequences (see *S. C. Highway Dept.* v. *Barnwell Bros.*, 303 U. S. 177; *Duckworth* v. *Arkansas*, 314 U. S. 390; *Parker* v. *Brown*, 317

U. S. 341; *U. S.* v. *Underwriters Assn.,* 322 U. S. 533, 548). Of course, State legislation which conflicts with Federal legislation (e.g., *McGoldrick* v. *Gulf Oil Corp.,* 309 U. S. 414; *Cloverleaf Co.* v. *Patterson,* 315 U. S. 148), or which discriminates against interstate commerce, is unconstitutional (The Federalist, No. 41; *Di Santo* v. *Pennsylvania,* 273 U. S. 34; *Hartford Indemnity Co.* v. *Illinois,* 298 U. S. 155; *Robbins* v. *Shelby Taxing District,* 120 U. S. 489, 494; *Caldwell* v. *North Carolina,* 187 U. S. 622). And State legislation purporting to affect interstate commerce is likewise ineffective if such State legislation has been specifically precluded by Congressional action. * * * More particularly, the Supreme Court of the United States has sustained the applicability of a State antitrust act while the Sherman Act was in effect, although that State act affected interstate commerce (*Standard Oil Co.* v. *Tennessee,* 217 U. S. 413). Indeed, the joint applicability of the Sherman Act and State antitrust legislation has scarcely ever been questioned (*Paine Lumber Co.* v. *Neal,* 212 F. 259, affd. 214 F. 82, affd. 244 U. S. 459; *Straus* v. *Am. Publishers' Assn.,* 231 U. S. 222).''

It is not deemed that section 876-a of the New York State Civil Practice Act was intended to have the effect of amending the substantive State law (common or statute) respecting restraint of trade and kindred subjects which, in the *Allen Bradley Co.* case (325 U. S. 797, *supra*), the United States Supreme Court ascribed to the Norris-LaGuardia Act (U. S. Code, tit. 29, §§ 101–115) as amending the Federal antitrust laws. That there is a difference in the judicial construction of the two acts is illustrated by *Wohl* v. *Bakery & Pastry Drivers Union,* where the Court of Appeals (284 N. Y. 788) held that the situation there presented did not fall within section 876-a, which was recognized by the United States Supreme Court to be a final adjudication upon the construction of the State statute (*sub nom. Bakery & Pastry Drivers Local* v. *Wohl,* 315 U. S. 769, 775), but it was nevertheless held to be a labor matter as a Federal question.

In *Marsich* v. *Eastman Kodak Co.* (244 App. Div. 295, affd. without opinion 269 N. Y. 621), it was stated by the Appellate Division (pp. 296–297):

" A Federal decision contrary in principle is not binding upon a State court in respect of a State statute or of a domestic doctrine not involving a Federal question. (*People ex rel. Central Park, etc., R. R. Co.* v. *Willcox,* 194 N. Y. 383, 386, per CULLEN, Ch. J.; *Johnston* v. *Compagnie Generale Trans-*

*atlantique,* 242 id. 381, 386, per POUND, J.; *People ex rel. Rice* v. *Graves,* 242 App. Div. 128.)

'' In considering the matter here involved, as was said in a similar situation, 'We may eliminate the Federal Anti-Trust laws' (*Barns* v. *Dairymen's League Co-operative Assn., Inc.,* 220 App. Div. 624, 635), and, as a consequence, the decisions thereunder. The enforcement of rights under such Federal statutes may be had in the Federal courts only. (*Barns* v. *Dairymen's League Co-operative Assn., Inc., supra,* p. 635; *Eastman Kodak Co.* v. *Powers Film Products, Inc.,* 189 App. Div. 556, 560.)

'' Federal cases interpreting Federal statutes, or relating to interstate situations, are not controlling when there are State decisions relating to the State statute invoked which may, in some respects, place upon a State statute an interpretation different from that placed by the Federal courts upon a different though somewhat similar Federal statute.''

The New York courts have held repeatedly that labor unions engaged in the conduct of secondary boycotts may be enjoined even where, unlike the present case, they were conducted in aid of a legitimate primary labor objective (*Auburn Draying Co.* v. *Wardell,* 227 N. Y. 1; *Canepa* v. '' *Doe* '', 277 N. Y. 52; *Opera on Tour, Inc.,* v. *Weber,* 285 N. Y. 348; *Scharf* v. '' *Doe* '', 247 App. Div. 882; *Chapman* v. *Doe,* 255 App. Div. 893; *Gulf Oil Corp.* v. *Smallman,* 270 App. Div. 129; *Jacobs* v. *Eisen,* 272 App. Div. 946; *Brennan* v. *Eisen,* 188 Misc. 672, affd. 272 App. Div. 799; *Arden Sales Corp.* v. *Hawley,* 176 Misc. 821, affd. 261 App. Div. 953).

The following cases held secondary boycotts to be in violation of section 722, subdivision 2, of the Penal Law: *People* v. *Bellows* (281 N. Y. 67); *People* v. *Fleishman* (36 N. Y. S. 2d 559); *People* v. *Tobin* (189 Misc. 296).

To a limited extent, under facts different from those involved herein, secondary boycotts have been allowed in *People* v. *Muller* (286 N. Y. 281, *supra*) and *Goldfinger* v. *Feintuch* (276 N. Y. 281) but, we believe, without reversing the general rule (*Enterprise Window Cleaning Co., Inc.,* v. *Slowuta,* 273 App. Div. 662).

In the present instance, unlike most of the other secondary boycott cases, no question is involved of picketing other firms for handling goods of nonunion manufacture, nor is any other kind of labor dispute at issue affecting the manufacturer. It is not disputed that plaintiff's frozen poultry has been slaughtered by an employee who is a member at large of defendant's

parent union, and who would be ineligible for membership in defendant union due to his place of occupation in New Jersey.

It remains to consider the effect of the Fourteenth Amendment to the Constitution (which has been held to include the First Amendment) respecting free speech. Picketing was held to be akin to free speech in *Thornhill* v. *Alabama* (310 U. S. 88) and in *Carlson* v. *California* (310 U. S. 106) in striking down a State statute and a municipal ordinance prohibiting all picketing in every kind of labor dispute. These were held to infringe labor's form of utterance to make its position known in legitimate labor matters. In *A. F. of L.* v. *Swing* (312 U. S. 321) it was ruled that the constitutional guaranty of freedom of discussion is violated by the common-law policy of a State limiting peaceful picketing by labor unions to cases in which the controversy is between the employer and his own employees, and in *Bakery & Pastry Drivers Local* v. *Wohl* (315 U. S. 769, *supra*) the constitutional guaranty was applied to what was held to have been in reality a labor dispute, although one which fell outside of the definition of section 876-a of the New York Civil Practice Act. In none of these cases were the facts at all similar to those at bar. In none of them, as here, was the United States Supreme Court dealing with an unlawful objective, one which is not a labor objective at all.

It is clear that, although partaking in some respects of the nature of free speech, the other aspects of picketing were not ignored. Thus in the *Wohl* case, in the prevailing opinion it is said (315 U. S. 769, 775, *supra*): "A state is not required to tolerate in all places and all circumstances even peaceful picketing by an individual." Likewise in his concurring opinion, Justice DOUGLAS said (p. 776): "Picketing by an organized group is more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated. Hence those aspects of picketing make it the subject of restrictive regulation." Ludwig Teller in an article entitled "Picketing and Free Speech" says (56. Harv. L. Rev. 180, 198): "The *Allen-Bradley* case, in which the Supreme Court sustained the Wisconsin court's injunction restraining picketing of employees' homes, cannot be reconciled with the identification of picketing with free speech." He adds (p. 203): "Freedom of speech has never been conceived of as a means of carrying on economic warfare by private groups, one against the other", and further

adds (p. 201) that often " the picket depends upon the observance by union members of the rule — either formally embodied or tacitly understood — forbidding the crossing of picket lines."

These conclusions have recently been upheld in carefully considered opinions by the Supreme Judicial Court of Massachusetts (*Colonial Press, Inc.,* v. *Ellis,* 321 Mass. 497; *Saveall* v. *Demers,* 322 Mass. 70).

In *Carpenters Union* v. *Ritter's Cafe* (315 U. S. 722) the court expressly recognized that picketing is a form of economic pressure and not alone the exercise of free speech.

The matter is summed up by E. Merrick Dodd in an article entitled " Picketing and Free Speech: A Dissent (56 Harv. L. Rev., 513, 518) : " The right to free speech is not absolute; and the right to indulge in conduct which is speech and something more is still less absolute, as Mr. Justice Frankfurter indicated in *Carpenters & Joiners Union of America, Local No. 213* v. *Ritter's Cafe.* But a prohibition of picketing is under some circumstances an infringement of the right of free speech."

Controlling features in this case are that the purpose of defendant's picketing to erect an embargo against the importation of frozen kosher poultry into New York City is an unlawful objective; that no labor controversy of any kind is involved; that the information on the signs carried by the pickets, informing customers of the retail stores and butcher shops handling plaintiff's goods that poultry is used which has not been slaughtered by members of defendant's union, while technically accurate, is actually misleading as indicating that there is a labor dispute whereas none exists; that these signs are not displayed for the purpose of publicizing any legitimate grievance of the union, but rather as a verbal act in a conspiracy to accomplish an unlawful purpose. " No conduct has such an absolute privilege as to justify all possible schemes of which it may be a part." (*Aikens* v. *Wisconsin* (195 U. S. 194, 206 [Holmes, J.]). Justice Holmes continued by saying: " The most innocent and constitutionally protected of acts or omissions may be made a step in a criminal plot, and if it is a step in a plot neither its innocence nor the Constitution is sufficient to prevent the punishment of the plot by law."

No charges of a criminal nature are made against this defendant, but the reasoning applies that the means do not justify the end. To identify the cherished constitutional protection of the right of free speech with immunity to impose private embargoes on foodstuffs entering New York City, would be as

unwarranted as to assume that free speech allows license to shout " Fire! " in a crowded theatre, to cite Justice HOLMES' famous example.

Section 876-a of the Civil Practice Act does not apply. The only portion of it which is contended to reach this suit is the part which refers to controversies " arising out of the respective interests of employer or employee, regardless of whether or not the disputants stand in the relation of employer and employee." (Subd. 10, par. [c].) Apart from the illegality of the objective as a secondary boycott, section 876-a does not apply where the controversy has no relation to terms or conditions of employment, or relates to something which could not even properly be the subject of collective bargaining (*Opera on Tour, Inc.,* v. *Weber,* 285 N. Y. 348, *supra*; *Baillis* v. *Fuchs,* 283 N. Y. 133).

We have not taken into account any effect upon this case of the Labor Management Relations Act of 1947, commonly known as the Taft-Hartley Act, except to note that in providing for the institution of injunction proceedings thereunder by the General Counsel of the National Labor Relations Board, it was clearly not intended to divest the State courts of jurisdiction which they had in cases of this kind before its adoption.

The order granting the motion to dismiss the complaint against defendant union should be reversed, with $10 costs and disbursements to the appellant and said motion denied, and the order denying plaintiff's application for a temporary injunction for the injunctive relief demanded in the complaint should be reversed, with $10 costs and disbursements to the appellant and the said application for a temporary injunction should be granted. The order dismissing the complaint against the individual defendants should be affirmed, with $10 costs and disbursements to said defendants-respondents.

SHIENTAG, J. (dissenting). I dissent and vote to affirm the order below dismissing the complaint as to the defendant union and denying the motion for a temporary injunction on the authority of *Allen Bradley Co.* v. *Local* (325 U. S. 797); *Bakery & Pastry Drivers Local* v. *Wohl* (315 U. S. 769); *People* v. *Muller* (286 N. Y. 281); *Exchange Bakery & Restaurant, Inc.,* v. *Rifkin* (245 N. Y. 260); *Goldfinger* v. *Feintuch* (276 N. Y. 281); *Nann* v. *Raimist* (255 N. Y. 307); *Stillwell Theatres, Inc.,* v. *Kaplan* (259 N. Y. 405). The complaint does not charge violence or that the picketing is accompanied by **false statements.** There was a " labor dispute " within the

meaning of section 876-a (subd. 10, par. [c]) of the Civil Practice Act for there is here involved a "controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the relation of employer and employee."

In any event the defendants were not engaged in an unlawful labor objective. The case of *Allen Bradley Co.* v. *Local* (325 U. S. 797, *supra*) is authority for that proposition. It is true that that case involved the application of the Sherman Antitrust Law but practically all of the contentions here made by the appellant concerning the absence of a labor dispute, the legality of the labor objective and the restraint upon interstate commerce were urged in that case. Mr. Justice ROBERTS, who refused to concur in the court's opinion, pointed out that the effect of the labor union's conduct was to set up a "wall" of exclusion but that view was rejected by the rest of the court. The labor objective not being unlawful, the peaceful picketing and nonmisleading appeal to the consuming public come within that area of freedom of speech which is guaranteed by the Federal Constitution (*A. F. of L.* v. *Swing,* 312 U. S. 321). Unlike *Carpenters Union* v. *Ritter's Cafe* (315 U. S. 722) we are confronted here with a limitation upon speech in circumstances where there exists an "'interdependence of economic interest of all engaged in the same industry'" (p. 727); the retail establishments here being picketed have a direct connection industrially with the controversy.

Moreover, there is here present the "human relationship" and the "actual employment" which were absent in *Opera on Tour* v. *Weber* (285 N. Y. 348, 357, *supra*), and unlike that case we have here a "controversy arising out of the respective interests of employer and employee whether they stand in such relationship or not." (P. 358.) The object of the picketing and of the appeal to the consuming public in this case is to prevent loss of jobs, wages, and welfare benefits to members of the respondent union already employed in the industry. The members of defendant union do not receive a steady weekly wage but are paid according to the number of pounds of poultry slaughtered by employee members with all the earnings pooled each week and then divided among all the members of the union.

The economic and social soundness, the wisdom or the practical expediency of the position taken by the union in this industrial controversy are not for this court to determine. (Cf. *United States* v. *Hutcheson,* 312 U. S. 219, 232.) The consuming public, which is interested, should be afforded the opportunity

of deciding these questions and a peaceful and truthful appeal to that public, by way of picketing the retail establishments directly involved in the dispute, is not unlawful; rather it' is protected by the fundamental law of the land.

The complaint does not allege (although the affidavits in support of the application for a temporary injunction do) that the frozen kosher poultry slaughtered outside of the State is slaughtered by a member of a recognized union affiliated with the American Federation of Labor of which defendant union is itself an affiliate. A deficiency in the complaint (and appellant did not avail itself of the right to amend accorded below) may not be supplied by the injunction affidavits. Moreover, assuming that the complaint did contain the allegation referred to, that precise question was passed upon adversely to the appellant's contention in the case of *Allen Bradley Co.* v *Local* (325 U. S. 797, *supra*). That case by the modification of the injunction there involved ruled upon the issues here presented. Whether or not it be called dictum, it was something more than a passing observation by the court. The ruling expressly permitted the union to do the very things here complained of by the appellant. (See, also, *United States* v. *Hutcheson,* 312 U. S. 219, *supra*; *Gundersheimer's, Inc.,* v. *Bakery & Confectionery Workers' Union,* 119 F. 2d 205; *Donnelly Garment Co.* v. *Dubinsky,* 154 F. 2d 38; *Nann* v. *Raimist,* 255 N. Y. 307, *supra*; *Stillwell Theatres, Inc.,* v. *Kaplan,* 259 N. Y. 405, *supra*; *Sachs Quality Furniture, Inc.,* v. *Hensley,* 269 App. Div. 264.)

It is urged that the Federal Taft-Hartley Act prohibits the peaceful picketing and persuasion here resorted to and specifically that *Allen Bradley Co.* v. *Local* (325 U. S. 797, *supra*) has in effect been superseded by that act. It is unnecessary for this court to determine that question in the instant case. We have no law corresponding to the Taft-Hartley Act in this State. True, interstate commerce is here directly affected but the State courts have no jurisdiction to issue injunctions for violation of the Taft-Hartley Act. We do have jurisdiction over actions for damages for violation of certain provisions of that act. However, this complaint is not framed under that statute. Primarily it is an action in equity for injunctive relief and, if the plaintiff base its claim to that relief on the provisions of the Taft-Hartley Act, it should resort to the procedure therein specified and apply to the tribunals which are therein given sole jurisdiction.

The complaint was properly dismissed, with leave to amend and the application for an injunction *pendente lite* properly denied.

PECK, P. J., GLENNON and DORE, J., concur with VAN VOOR-HIS, J.; SHIENTAG, J., dissents in opinion, on appeal from the order denying motion of plaintiff for a temporary injunction and from the order granting motion of defendant union to dismiss the complaint against said defendant as insufficient in law. denied.

Order denying plaintiff's motion for a temporary injunction reversed, with $10 costs and disbursements to the appellant, and the motion granted. Order granting motion to dismiss the complaint against defendant union reversed, with $10 costs and disbursements to the appellant, and said motion denied. Order dismissing the complaint against the individual defendants unanimously affirmed, with $10 costs and disbursements to said defendants-respondents. Settle orders on notice. [See *post,* p. 877.]