## (June 29, 1951.)

GOODWINS, INC., et al., Appellants, *v.* FRANK HAGEDORN, as President of Department Store & Variety Store Employees Union, Local 1115A, Retail Clerks International Association, A. F. of L., et al., Respondents, et al., Defendants.

Judgment affirmed, with costs to the respondents.

DORE, J. (dissenting). In this case, two rival labor organizations have demanded recognition by plaintiffs, employer, as sole bargaining agent of plaintiffs' employees in plaintiffs' Brooklyn retail store. Petitions for certification were filed by two rival unions before the National Labor Relations Board. On March 16, 1951, two days after the picketing herein began, plaintiffs, the employer, consented to an immediate election before that board to determine which of the rival unions should be sole collective bargaining agency. Neither union would consent to such election but there were filed against plaintiffs charges of unfair labor practice before that board. Although pending for nearly three months, neither proceeding has been processed or determined. Meanwhile one of defendant labor unions, Local 1506, A. F. of L., and its allies, the other defendants herein, have been picketing plaintiffs' retail store in Brooklyn since March 14, 1951, every business hour of the day and night, sometimes with as many as ten pickets and with placards proclaiming that plaintiffs refuse to bargain collectively with Local 1506.

The complaint alleges, the proof establishes and defendants' counsel on argument admitted that defendant union, Local 1506, by the picketing in question was bringing economic pressure to bear *on the employer* to execute a contract making that union sole bargaining agent for plaintiffs' employees without an election and before representative proceedings by the rival unions have been determined. Accordingly, on this proof, the picketing herein is not for organization purposes directed at the employees but concededly at the employer.

In addition to alleging that what defendants demand and are seeking to coerce plaintiffs into doing would be a violation of the Labor Management Relations Act of 1947 (the Taft-Hartley Act; U. S. Code, tit, 29, § 141 *et seq.*) on the part of plaintiffs, the complaint herein also expressly alleges violation of the New York State Labor Law on the part of defendants. There is here no controversy between plaintiffs and its employees who are not on strike. Not one of plaintiffs' employees has participated in the picketing at any time. Assertions have been made regarding the employer's alleged unfair treatment of the employees but the record is barren of any proof whatever of these mere assertions. No employee or former employee of plaintiffs was called to substantiate these unproved charges. Under sections 700, 703 and 704 of the New York State Labor Law, the picketing is for an unlawful objective, namely, to coerce the employer into signing a contract with defendant union, one of two rival unions, before an election and while representative proceedings are pending undetermined and is accordingly against the public policy of the State of New York.

Under New York law this demand is an attempt to coerce the employer to commit an unfair labor practice and has been held such by the New York State Labor Relations Board under subdivision 10 of section 704 of the Labor Law (*Matter of Kappel*, 13 N. Y. S. L. R. B. No. 116 [Oct., 1950]).

On the other hand the unlawful purpose behind the present picketing does not fall within the interdiction of any of the clauses of the Taft-Hartley Act relied upon by the learned Official Referee or by defendants as an unfair labor practice *by the union*. Under none of the complicated subordinate clauses of the relevant subdivision (b) of section 8 of the Labor Management Relations Act of 1947 (U. S. Code, tit. 29, § 158) is the picketing by defendant union under the circumstances disclosed an unfair labor practice *by the union*. Paradoxically, however, if the employer yields to the coercion used and signs an exclusive contract with defendant Local 1506, A. F. of L., *that* act of the employer would be under the Federal act an unfair labor practice *by the*

*employer*. (§ 8, subd. [a], par. [1]; U. S. Code, tit. 29, § 158.)   The rival union, Local 1250B, District 65 (not affiliated with A. F. of L.), would on such act by the employer have a legal basis for picketing the employer at the premises and doubtless would do so promptly as it had picketed this employer on a previous occasion.   The employer is thus between Scylla and Charybdis while its good will and its right to carry on its business without molestation is seriously affected whatever it does.   Yet the employer is now told that the Supreme Court of the State of New York has no power to give any relief though relief is not presently available in any other forum.   This is to abandon law as reason in a controversy of this kind and leave the parties to a species of violence.

An intention of Congress to exclude States from exercising their police power must clearly be manifested.   This court and the United States Supreme Court have held that even peaceful picketing for an unlawful objective may properly be enjoined (*Haber & Fink* v. " *Jones* ", 277 App. Div. 176, 180; *La Manna* v. *O'Grady*, 278 App. Div. 77; *Mayer Bros. Poultry Farms* v. *Meltzer*, 274 App. Div. 169; *Building Service Employees International Union* v. *Gazzam*, 339 U. S. 532; *International Brotherhood of Teamsters Union* v. *Hanke*, 339 U. S. 470).   As defendants' picketing is for an unlawful purpose, section 876-a of the Civil Practice Act is not applicable.

If the precise facts of the present controversy do not involve an unfair *union* labor practice within the purview of the Labor Management Relations Act of 1947, plaintiffs were not under the necessity of seeking relief in the first instance from the Federal agency which under the circumstances herein is without jurisdiction to enjoin the picketing as an unlawful labor practice.   That distinguishes this case from cases recently decided by the Court of Appeals holding that resort in the first instance must be made to the National Labor Relations Board; e.g., *Costaro* v. *Simons* (302 N. Y. 318, 322); *Ryan* v. *Simons* (302 N. Y. 742); in those cases relief was available under the Federal act.

The case most heavily relied on by the learned Official Referee and defendants, *International Union of United Automobile Workers* v. *O'Brien* (339 U. S. 454) is completely distinguishable on its facts.   In that case a Michigan statute provided there could be no strike unless there was first a strike vote by a majority of the union members. It was held that this conflicted with explicit provisions of the Taft-Hartley law permitting strikes at a different and usually earlier time than the Michigan law, and not requiring majority authorization for any strike.   All the court held was that the particular statute before it could not stand because of the conflict between State and Federal law.   In this case there is no strike and no question is raised of any State statute in direct conflict with Federal law.   Accordingly, that case is not here controlling, but what the Supreme Court there said in distinguishing other cases is apposite to the present case (p. 459): " In the Wisconsin *Auto-Workers* case, we concluded that the union tactic was ' neither forbidden by federal statute nor was it legalized and approved thereby.' 336 U. S. at 265. ' There is no existing or possible conflict or overlapping between the authority of the Federal and State Boards, because the Federal Board has no authority either to investigate, approve or forbid the union conduct in question.   This conduct is governable by the State or it is entirely ungoverned.' *Id.* at 254."

On the same day the *O'Brien* case (*supra*) was decided, May 8, 1950, by the Supreme Court, another labor case was decided by the same court, *Building Service Employees International Union* v. *Gazzam* (*supra*) which upheld a State court injunction of the State of Washington preventing a union from

picketing an employer to compel him to coerce his employees' choice of a bargaining representative. The picketing was held unlawful as an attempt to induce transgression of the State policy and the injunction decree of the Supreme Court of Washington was unanimously affirmed. Holding that *Giboney* v. *Empire Storage & Ice Co.* (336 U. S. 490) was controlling, the United States Supreme Court said at page 540: "Here, as in *Giboney,* the union was using its economic power with that of its allies to compel respondent to abide by union policy rather than by the declared policy of the State. That state policy guarantees workers free choice of representatives for bargaining purposes. If respondent had complied with petitioners' demands and had signed one of the tendered contracts and lived up to its terms, he would have thereby coerced his employees. The employees would have had no free choice as to whether they wished to organize or what union would be their representative." The enunciated public policy of the State of New York is the same as that of the State of Washington on the issues presented (cf. Labor Law, §§ 700, 703, 704).

In *Mayer Bros. Poultry Farms* v. *Meltzer* (*supra*) this court expressly held in a case involving interstate commerce that the Taft-Hartley Act was not intended to entirely divest State courts of jurisdiction. On the facts herein disclosed, the present status of the controversy as to the picketing is governed by State law or it is entirely ungoverned. The Supreme Court of the State of New York does not lack jurisdiction.

The recent opinion of the United States Supreme Court in *National Labor Relations Bd.* v. *International Rice Milling Co.* (341 U. S. 665), called to this court's attention after argument herein, is not inconsistent with the above-expressed views. In fact that case confirms plaintiffs' contention in this case that they were told by the attorney in the local office of the National Labor Relations Board that what was happening to them did not "add up" to a secondary boycott under the Taft-Hartley law. The court in its opinion clearly indicated that the Taft-Hartley Act was not exclusive because it held as an alternative, "or [the complaint] would have addressed itself to local authorities."

On the record, defendant unions are presently unlawfully interfering with plaintiffs' right to carry on its business, a thing of value, without just cause, for an illegal objective. Accordingly, I dissent and vote to reverse the judgment of dismissal and to grant plaintiffs an injunction limited to the extent of restraining defendants and each of them from maintaining a picket line at any part of plaintiffs' premises.

Glennon, Cohn and Shientag, JJ., concur in decision; Dore, J., dissents in opinion in which Peck, P. J., concurs.

Judgment affirmed, with costs to the respondents. No opinion. [199 Misc. 518.]